## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA CHILDREN'S MEDICAL CENTER, d/b/a LCMC HEALTH**, <br><br> Plaintiff <br><br> *v.* <br><br> **MERRICK GARLAND,** in his official capacity as **ATTORNEY GENERAL OF THE UNITED STATES,** <br><br> **UNITED STATES DEPARTMENT OF JUSTICE,** <br><br> **FEDERAL TRADE COMMISSION**, <br><br> and <br><br> **UNITED STATES OF AMERICA,** <br><br> Defendants | CIVIL ACTION <br><br> No. **23-1305** |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Louisiana Children's Medical Center ("LCMC"), by and through its undersigned attorneys, alleges as follows:

### INTRODUCTION

1.     This action seeks a declaratory judgment that the Hart-Scott-Rodino Antitrust Improvements Act ("HSR Antitrust Act") does not apply to transactions that are immune from federal antitrust laws under the doctrine of state action immunity.  A declaratory judgment is needed to vindicate an important policy choice of the State of Louisiana concerning the health care services available to its citizens.

1

2.      The State Legislature and Attorney General have expressly and unequivocally authorized LCMC to acquire Tulane University Medical Center, Lakeview Regional Medical Center, and Tulane Lakeside Hospital (the "Acquisition") from HCA Healthcare, Inc. ("HCA"), a for-profit provider network that previously operated the three hospitals through a joint venture with the Tulane University of Louisiana ("Tulane").

3.      The State Legislature and Attorney General have expressly and unequivocally concluded that the Acquisition furthers the State's policy goals for the health and welfare of its citizens.

4.      The State Legislature and Attorney General have expressly and unequivocally provided for active supervision by the Attorney General of the Acquisition's implementation and subsequent operations of the merged entity.

5.      As a result, the Acquisition is clearly and indisputably immune from the federal antitrust laws—including the HSR Antitrust Act—consistent with a long line of Supreme Court precedent affirming the state-action antitrust immunity, as well as the HSR Antitrust Act's plain text.

6.      The Federal Trade Commission ("FTC") has nevertheless demanded that the Acquisition must be halted and submitted to a costly HSR review and approval, on pain of crushing daily penalties for noncompliance, to be enforced by the United States in a civil action.

7.      LCMC respectfully requests a judgment declaring that, under the state action immunity doctrine, LCMC and the other parties to the Acquisition, including HCA, are not subject to (1) a requirement to submit a notification providing notice of the Acquisition and observe a waiting period under the HSR Antitrust Act, with the filing fee defined at 16 C.F.R. § 803.9; or (2) penalties under the HSR Antitrust Act, 15 U.S.C. § 18a(g)(1), for consummating the

Acquisition without the submission of a notification and expiration or termination of a waiting period under the HSR Antitrust Act.

8.    The state action immunity doctrine, grounded in the sovereign rights of the States, exempts "from the federal antitrust laws" private parties who are "carrying out the State's regulatory program."  *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 224-25 (2013). Private conduct—including transactions like the Acquisition—is exempted from enforcement of "the federal antitrust laws" where the conduct is authorized by clearly articulated and affirmatively expressed state policy and actively supervised by a state actor.  *Id.*  The HSR Antitrust Act enacted Section 7A of the Clayton Antitrust Act and is indisputably a federal antitrust law.  Were it otherwise, HSR could not be reconciled with the state-action doctrine because HSR imposes substantive waiting periods on mergers—mergers that are indisputably immune from Section 7 of the Clayton Antitrust Act.  Consistent with the state action immunity doctrine, the HSR Antitrust Act itself excludes transactions that are exempt from the antitrust laws.  15 U.S.C. § 18a(c)(4), (5).

9.    Pursuant to this doctrine, the Louisiana Legislature has established a process for exempting certain health care acquisitions from enforcement of the antitrust laws in order to promote public health:

> The legislature finds that the goals of controlling health care costs and improving the quality of and access to health care will be significantly enhanced in some cases by . . . mergers and consolidations among health care facilities.  The purpose of this Part is to provide the state . . . with direct supervision and control over the implementation of cooperative agreements, mergers, joint ventures, and consolidations among health care facilities for which certificates of public advantage are granted.  ***It is the intent of the legislature*** that supervision and control

over the implementation of these agreements, mergers, joint ventures, and consolidations substitute state regulation of facilities for competition between facilities and that this regulation have the effect of ***granting the parties to the agreements, mergers, joint ventures, or consolidations state action immunity*** *for actions that might otherwise be considered to be in violation of state antitrust laws,* ***federal antitrust laws****, or both.*

La. R.S. § 40:2254.1 (emphasis added).

10.     The process for approving an exemption is a lengthy one that requires voluminous submissions by applicants, notice to the public, input from a wide range of stakeholders, a public hearing, and consideration by numerous State officials.  The rigorous review process ensures that only applications that clearly benefit the public are approved; indeed, upon information and belief, prior to the Acquisition, the State of Louisiana had never approved an application since the statute was enacted in 1997.

11.     On December 28, 2022, in response to a comprehensive application submitted by LCMC and HCA, and following a public notice-and-comment period and a public hearing, the State Attorney General issued a Certificate of Public Advantage ("COPA") authorizing the Acquisition and adopting a set of terms and conditions establishing active supervision of the Acquisition by the Attorney General.

12.     In issuing the COPA, the State of Louisiana expressly and unequivocally adopted a State policy authorizing the Acquisition and removing it from regulation under the antitrust laws, including the HSR Antitrust Act on which Defendants seek to rely.  In other words, the Acquisition is entirely shielded by the state action immunity doctrine.

13.     Despite Louisiana's express authorization and supervision of the Acquisition, and the applicability of state action immunity, the FTC has ordered LCMC to halt the Acquisition, submit notice of the Acquisition under the HSR Antitrust Act, and pay a filing fee.  The FTC's directive that LCMC must submit notice of the Acquisition is an immediate threat of imposition of a statutory penalty of tens of thousands of dollars *each day* until the FTC "clears" the Acquisition—which it may never do.

14.     The FTC has informed LCMC of its view that LCMC is in the penalty period, which began on January 1, 2023, and that the penalty is accruing daily.  The FTC has threatened LCMC with enforcement of this penalty in a civil suit brought by the Department of Justice on behalf of the United States.

15.     None of this action is necessary or lawful.  The Acquisition is exempt from the federal antitrust laws as a result of the Louisiana COPA.  Contrary to the FTC's directive, the parties to the Acquisition, including LCMC and HCA, have no obligation to halt the implementation of the Acquisition, submit a filing pursuant to the HSR Antitrust Act (an "HSR Filing"), observe a waiting period, or pay the associated filing fee, and the United States may not impose a civil monetary penalty on LCMC or HCA for the failure to submit such a filing.  LCMC brings this action to remove the threat created by the FTC's unlawful demand, to obtain a declaration rejecting the FTC's determination that LCMC and HCA must submit an HSR Filing, and to obtain a declaration that LCMC and HCA are not subject to penalties in an action brought by the United States under 15 U.S.C. § 18a(g)(1).

16.     The HSR Antitrust Act, which amended the Clayton Antitrust Act to add Section 7A, 15 U.S.C. § 18a, is indisputably a federal antitrust law.  Section 7A(g)(1), when it applies, mandates that "no person shall acquire, directly or indirectly, any voting securities or assets of any

other person," unless the parties "file notification" with the FTC and obtain administrative preclearance for the transaction.  15 U.S.C. § 18a.  Parties that consummate a covered transaction without preclearance are subject to daily penalties, which are currently at least $46,517 per day.[1] *Id.* § 18a(g)(1).  This "penalty may be recovered in a civil action brought by the United States." *Id.*  "[T]here can be no reasonable dispute that an HSR Act civil penalty action arises 'under the antitrust laws.'"  *United States v. Blavatnik*, 168 F. Supp. 3d 36, 41 (D.D.C. 2016).

17.    Accordingly, the HSA Antitrust Act is a "federal antitrust law[]" subject to state action immunity.  *Phoebe Putney*, 568 U.S. at 225; *see also City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 384 (1991); *Parker v. Brown*, 317 U.S. 341, 351-52 (1943).

18.    Requiring payment of a fee or imposing a fine for failure to file a notification and observe a waiting period pursuant to the HSR Antitrust Act is a form of antitrust liability, which— if imposed on a merging party whose transaction is subject to the state action immunity doctrine— would negate the purpose of that doctrine.  Put differently, the parties to the Acquisition are exempt from antitrust liability in all forms, whether such liability would arise under the HSR Antitrust Act (Section 7A of the Clayton Act) or under the substantive Section 7 of the Clayton Act.

19.    The plain text of the HSR Antitrust Act—properly interpreted— is consistent with the state action immunity doctrine.  It includes a number of exceptions to the Act's applicability, including for transactions that are "specifically exempted from the antitrust laws by Federal statute," 15 U.S.C. § 18a(c)(5), and those which are "transfers to or from . . . a State or political subdivision thereof," 15 U.S.C. § 18a(c)(4).  Read in light of Supreme Court precedent, this extends to mergers among private parties who qualify for state action immunity because a merger

---

[1]    *See*  https://www.ftc.gov/news-events/news/press-releases/2023/01/ftc-publishes-inflation-adjusted-civil-penalty-amounts-2023.

that qualifies for immunity is not attributable to private parties, but is instead "the State's own" conduct.  *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 635 (1992).

20.     Despite issuance of the COPA, which is expressly intended to grant and does grant state action immunity from liability under the antitrust laws, the FTC is unlawfully attempting to force LCMC and HCA to submit a notification of the Acquisition and observe a waiting period pursuant to the HSR Antitrust Act and to pay the HSR Filing fee.  The FTC has threatened enforcement by the United States for penalties under 15 U.S.C. § 18a(g)(1), notwithstanding the fact that the parties to the Acquisition, including LCMC, are immune from those penalties.

21.     The FTC's actions constitute a significant violation of federal law and Louisiana's sovereignty.  Left unchecked, this agency overreach would not only offend important principles of federalism, but also harm the people of Louisiana who are well-served by the Acquisition—as Louisiana itself concluded when it issued a COPA to approve the transaction.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1337.

23.     This Court has the authority to grant the declaratory relief sought pursuant to the Declaratory Judgment Act.  *See* 28 U.S.C. §§ 1361, 2201, 2202.

24.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1).

25.     Defendants lack sovereign immunity in a declaratory judgment action challenging their threatened violation of federal law.  *See* 5 U.S.C. 702; *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 691, n. 11 (1949); *Dugan v. Rank*, 372 U.S. 609, 621–622 (1963).

## PARTIES

26.     LCMC is a non-profit health system operating as an Organized Health Care Arrangement under Louisiana law.  It is a nonprofit network of health care providers, which

operates nine hospitals and a number of other locations in Louisiana and Mississippi.  Its principal place of business is 1100 Poydras Street, New Orleans, LA 70163.

27.     Defendant Merrick Garland is the Attorney General of the United States.  He is sued in his official capacity.

28.     Co-Defendant United States Department of Justice is an Executive Department of the United States.

29.     Co-Defendant FTC is an administrative agency of the United States government, established by the FTC Act, 15 U.S.C. §§ 41-58, with its principal offices at 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580.

30.     Co-Defendant is the United States of America.

**ALLEGATIONS**

**I.     LCMC's Role in the Community**

31.     LCMC was formed in 2009 through a partnership between Children's Hospital and the Touro Infirmary in New Orleans.

32.     LCMC is a non-profit health system dedicated to providing the best possible care for every person and parish in Louisiana and beyond.  It operates nine hospitals and also provides a network of urgent care centers across the greater New Orleans area, as well as other health care services.

33.     LCMC also plays an important role in developing the next generation of health care professionals.  It partners with local universities to provide training for medical, dentistry, nursing, and other students.

34.     The State of Louisiana has long trusted LCMC as a critical part of its public health policy.  For example, in 2012-2013, LCMC partnered with the State to operate the Interim LSU

Hospital, which preserved services and access to care in New Orleans, and also averted a significant disruption in university teaching programs. Likewise in 2015, the State contracted with LCMC to operate the new University Medical Center New Orleans.

35. Prior to the Acquisition, LCMC operated Children's Hospital New Orleans, East Jefferson General Hospital, New Orleans East Hospital, Touro Infirmary, University Medical Center New Orleans, and West Jefferson Medical Center. These hospitals have been recognized with a number of awards and accreditations for their high standard of care.[2]

## II.    The State Action Immunity Doctrine

36. The Supreme Court has made clear that where private parties are actively supervised in carrying out a clearly articulated anticompetitive policy of the State, they are treated as the State for purposes of state action immunity. *Ticor*, 504 U.S. at 635 (the private anticompetitive conduct is the "State's own").

37. For the doctrine to apply, the State must have clearly articulated and affirmatively expressed as State policy the alleged restraint on competition, and must actively supervise the anticompetitive act. Here, the Louisiana COPA statute and the COPA concerning the Acquisition does just that. *See* La. R.S. § 40:2254.1 *et seq.*

38. This doctrine is grounded in constitutional principles of federalism, in accordance with the "dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority." *Parker*, 317 U.S. at 351.

---

[2] https://www.lcmchealth.org/about-us/awards-accreditations/.

39.     The doctrine vindicates the States' sovereign authority to regulate certain matters without interference from the antitrust laws, which the federal government has improperly brought to bear against LCMC (and Louisiana) in this case.

40.     Pursuant to this doctrine, a number of States—including Louisiana—have enacted statutes by which hospital mergers like the Acquisition can be exempted from the antitrust laws in instances where the State issues a COPA.

### III.    The Louisiana COPA Statute

41.     Louisiana enacted a COPA statute, reflecting legislative recognition that "the goals of controlling health care costs and improving the quality of and access to health care will be significantly enhanced in some cases by cooperative agreements and by mergers and consolidations among health care facilities."  La. R.S. § 40:2254.1.

42.     The statute's purpose is "to provide the state . . . with direct supervision and control over the implementation of cooperative agreements, mergers, joint ventures, and consolidations among health care facilities for which certificates of public advantage are granted."  *Id.*

43.     The statute expressly declares the "intent of the legislature that supervision and control over the implementation of these agreements, mergers, joint ventures, and consolidations substitute state regulation of facilities for competition between facilities and that *this regulation have the effect of granting the parties to the agreements, mergers, joint ventures, or consolidations state action immunity* for actions that might otherwise be considered to be in violation of state antitrust laws, federal antitrust laws, or both."  *Id.* (emphasis added).

44.     The State Attorney General authorizes and issues COPAs in Louisiana.  The COPA statute provides that a COPA is "a written certificate issued by the [State Department of Justice] as evidence of the department's intention that the implementation of a cooperative agreement, when actively supervised by the department, receive state action immunity from prosecution by

the state or by any district attorney in the state as a violation of state or federal antitrust laws."  La. R.S. § 40:2254.2.

45.     The statute also provides that the State Department of Justice "may not issue a [COPA] unless the department finds that the agreement is likely to result in lower health care costs or is likely to result in improved access to health care or higher quality health care without any undue increase in health care costs.  If the department denies an application for a certificate for an executed agreement, the parties may submit a new application for a certificate based upon a cooperative agreement, merger, joint venture, or consolidation different from the original application."  La. R.S. § 40:2254.4.

46.     The statute provides for the State Attorney General to enforce the COPA, permitting that office to "bring an action in the name of the state against a person or persons to whom a certificate has been issued in order to enforce any terms or conditions imposed by the [State Department of Justice] upon the issuance of the certificate, to enjoin the violation of the terms or conditions, or to enjoin any material violation of or deviation from the terms of the cooperative, merger, joint venture, or consolidation agreement submitted to and approved by the department."  La. R.S. § 40:2254.10.

47.     The statute requires the merging entities subject to a COPA to "submit a report to the [State Department of Justice] evaluating whether the cooperative, merger, joint venture, or consolidation agreement submitted to and approved by the department has been complied with during the preceding year and, if applicable, evaluating whether any terms and conditions imposed by the department when it issued the certificate have been met or otherwise satisfied during the preceding year."  La. R.S. § 40:2254.11.  The statute requires this report to be "submitted annually

or more frequently if required by the department," which "shall in turn issue findings as to whether the terms and conditions are being met or otherwise satisfied." *Id.*

**IV.     The Acquisition and Louisiana's Decision to Exempt it From the Antitrust Laws**

48.     The Acquisition is a transaction designed to increase access to clinical services and high-quality health care in the New Orleans region and create expanded hubs for specialty care, innovation, and academic medicine in the region.

49.     HCA previously operated the three hospitals acquired in the Acquisition—Tulane University Medical Center, Lakeview Regional Medical Center, and Tulane Lakeside Hospital (the "UHS Hospitals") through University Healthcare System, L.C. ("UHS"), a joint venture between Tulane and affiliates of HCA.

50.     The Acquisition was structured such that HCA transferred its ownership interest in UHS to Tulane, and LCMC then acquired the membership interests of UHS and related equity interests in certain physician clinics from Tulane.

51.     The Acquisition also contemplates a partnership between LCMC and Tulane that will provide significant benefits to the greater New Orleans community, even beyond the improvements in access to health care.   For example, the Acquisition (1) represents an approximately $600 million commitment from Tulane to further develop downtown New Orleans, including new construction and enhancements; (2) includes the establishment of new nursing, clinical research, and graduate scholarship programs; and (3) has the potential to establish new Centers of Excellence in Louisiana.

52.     In addition, as part of the Acquisition, LCMC agreed to commit at least $220 million in capital investments to improve multiple hospitals in the first five years following the close of the transaction.

53.     On December 28, 2022, the State of Louisiana granted a COPA approving the agreements and merger effectuating the Acquisition.[3]  The COPA reflects Louisiana's clearly articulated and affirmatively expressed intent that the Acquisition should be exempt from the federal antitrust laws.  It is an important aspect of the State's health care policy, and an area of regulation constitutionally reserved for State—not federal—oversight.

54.     Moreover, the issuance of this COPA necessarily means that the State found "that the agreement is likely to result in lower health care costs or is likely to result in improved access to health care or higher quality health care without an undue increase of health care costs."  La. R.S. § 40:2254.4.

55.     The COPA expressly provides for Louisiana's active supervision of the Acquisition's implementation and the subsequent operations of the merged entity.  In this way, Louisiana actively supervises the Acquisition and the subsequent operations of the merged entity.

56.     The COPA was also subject to terms and conditions issued by the State Attorney General, which further provide for active supervision of the Acquisition and the subsequent operations of the merged entity.

57.     In addition, the Louisiana COPA statute itself provides for active supervision of the Acquisition and the subsequent operations of the merged entity by permitting the State Attorney General to enforce the terms of the COPA, La. R.S. § 40:2254.10, and via the annual reporting requirements for the merged entity subject to the COPA, La. R.S. § 40:2254.11.

58.     On January 1, 2023, the parties to the Acquisition closed the transaction.  Since then, LCMC has been integrating the UHS Hospitals and physician clinics into its heath care network to deliver on the promised benefits for the people of Louisiana.

---

[3] *See* Exhibits A-B.

**V.      Because of the COPA, the Acquisition is Exempt From the Antitrust Laws, including the HSR Antitrust Act**

59.     By issuing a COPA for the Acquisition, Louisiana asserted its sovereign authority under the state action immunity doctrine to exempt the transaction from Defendants' oversight under the antitrust laws.

60.     By its clearly articulated and affirmatively expressed assertion that the Acquisition is a matter of its own policy and not subject to the antitrust laws, together with active supervision of the transaction, Louisiana has stripped Defendants' authority to regulate the Acquisition under the federal antitrust laws.

61.     The HSR Antitrust Act, which amended the Clayton Act and pursuant to which Defendants seek to require LCMC to submit an HSR Filing and pay the associated filing fee and penalty, is a federal antitrust law subject to the state action immunity doctrine.

**VI.     The FTC's Order that LCMC Submit an HSR Filing**

62.     On March 3, 2023, counsel from the FTC's Premerger Notification Office contacted LCMC's counsel, asking to be "walk[e]d . . . through the HSR analysis" for the Acquisition.  Counsel for LCMC responded that "Attorney General Jeff Landry of Louisiana approved a Certificate of Public Advantage (COPA) under Louisiana Revised Statute [40:2254.1], et seq., for LCMC Health's below-referenced partnership with Tulane University.  The COPA was granted prior to the closing of the transaction."[4]

63.     The FTC's response stated in part that LCMC's email "is not sufficient to explain why [LCMC] didn't file an HSR notification prior to its January 2023 acquisition."  The FTC continued, "Please explain your HSR analysis as to why the acquisition did not require an HSR

---

[4] The relevant email correspondence with the FTC is appended to this Complaint as Exhibit C.

notification.  Additionally, please provide more detail on how the Louisiana COPA analysis exempts the acquisition from HSR notification."[5]

64.    Following a more detailed reply from LCMC's counsel, the FTC signaled its definitive disagreement with LCMC's position and ordered LCMC to submit an HSR Filing (the "FTC's Order").  The FTC stated, "We disagree with your analysis below.  Assuming your transaction met the statutory thresholds, you should have submitted an HSR filing.  Please submit your HSR filing as soon as possible."[6]

65.    The FTC's Order that LCMC submit an HSR Filing would impose on LCMC a filing fee of at least $30,000.  Moreover, the FTC's Order poses an even greater threat to LCMC because LCMC is subject to a daily penalty for the putatively delayed HSR Filing.  For each relevant day up to and including January 10, 2023, the penalty could be up to $46,517 per day.  For each day thereafter, it could be up to $50,120 per day.

66.    By threatening LCMC with these penalties, notwithstanding Louisiana's decision to authorize the Acquisition, the FTC's apparent goal is to prevent States from enacting or implementing COPA statutes.  The HSR antitrust review process is costly and enables the FTC to impose substantial delays to the closing of an acquisition.  If the FTC succeeds in subjecting state-authorized mergers to Section 7A of the Clayton Act, it will permanently hamper the ability of States to authorize and approve time-sensitive mergers, even in instances where, as here, the State has concluded that a given transaction serves its critical interest in providing affordable, quality health care to its citizens.

---

[5] *Id.*
[6] *Id.*

**CLAIMS FOR RELIEF**

**Count I—Declaratory Judgment Pursuant to the Hart-Scott-Rodino Antitrust Act**

67.     LCMC incorporates by reference the allegations contained in the previous paragraphs as though set forth fully herein.

68.     LCMC is entitled to a declaration of its rights with respect to an actual and ongoing controversy over the applicability of state-action immunity to the HSR Antitrust Act, 15 U.S.C. § 18a.

69.     The state-action immunity doctrine applies to the "federal antitrust laws," *Phoebe Putney*, 568 U.S. at 225, including the HSR Antitrust Act.

70.     The Acquisition is immune from the federal antitrust laws, including the HSR Antitrust Act.  The Acquisition was expressly authorized by the Louisiana State Legislature and the Louisiana Attorney General, and the implementation of the Acquisition is actively supervised by the Louisiana Attorney General.

71.     The FTC's Order improperly exceeds Defendants' authority under the HSR Antitrust Act in violation of the state action immunity doctrine.

72.     Compliance with the FTC's Order would impose economic costs on LCMC, including the HSR Filing fee.

73.     The FTC has threatened enforcement by the United States for penalties under 15 U.S.C. § 18a(g)(1), notwithstanding the fact that the parties to the Acquisition, including LCMC, are immune from those penalties.  According to the FTC, the penalties are currently accruing daily.

74.     Because of the FTC's directive to halt the Acquisition and submit to a costly notice and review process, and because of the ongoing threat of crushing penalties enforced by the U.S.

Department of Justice, a declaratory judgment is immediately necessary to resolve the rights and obligations of the parties.

## PRAYER FOR RELIEF

Wherefore, LCMC prays for the following relief:

a. A declaration, order, and judgment holding that the parties to the Acquisition, including LCMC and HCA, are not obligated to submit an HSR Filing concerning the Acquisition or to pay a related filing fee as defined at 16 C.F.R. § 803.9;

b. A declaration, order, and judgment holding that the parties to the Acquisition, including LCMC and HCA, are not subject to any fine or penalty under 15 U.S.C. § 18a(g)(1) or any other antitrust law in connection with the Acquisition;

c. Any other relief this Court deems just and proper.

Dated:  April 19, 2023                    Respectfully submitted,

/s/ Diana Cole Surprenant
E. Paige Sensenbrenner (#18429) – T.A.
Diana Cole Surprenant (#33399)
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Tel:  (504) 581-3234
paige.sensenbrenner@arlaw.com
diana.surprenant@arlaw.com

/s/ Kenneth W. Field
Kenneth W. Field (*pro hac vice* forthcoming)
Benjamin F. Holt (*pro hac vice* forthcoming)
Sean Marotta (*pro hac vice* forthcoming)
Christopher M. Fitzpatrick (*pro hac vice* forthcoming)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel:  (202) 637-5600
ken.field@hoganlovells.com
benjamin.holt@hoganlovells.com
sean.marotta@hoganlovells.com
chris.fitzpatrick@hoganlovells.com

/s/ Robert N. Stander
Robert N. Stander (*pro hac vice* forthcoming)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel:  (202) 879-7628
rstander@jonesday.com

*Counsel for Plaintiff Louisiana Children's Medical Center*