**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| **LOUISIANA CHILDREN'S MEDICAL CENTER, d/b/a LCMC HEALTH,**<br><br>         **Plaintiff,**<br>**v.**<br><br>**ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,**<br><br>         **Defendants.** | **CASE NO. 2:23-cv-01305-LMA-MBN**<br>**c/w 23-cv-1311**<br>**c/w 23-cv-1890**<br><br>**JUDGE LANCE M. AFRICK SECTION I**<br><br>**MAGISTRATE JUDGE MICHAEL B. NORTH DIVISION 5**<br><br>**REF CASE NO. 2:23-cv-01890** |

**MEMORANDUM IN SUPPORT OF PETITIONER FEDERAL TRADE
COMMISSION'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

On January 1, 2023, Respondent LCMC Health ("LCMC") acquired three hospitals in Louisiana owned by Respondent HCA Healthcare Inc. ("HCA"). By closing their transaction without filing notification forms and observing the statutorily required waiting period, LCMC and HCA violated the Hart-Scott-Rodino Act ("HSR Act"). Petitioner Federal Trade Commission ("FTC" or "Commission") filed this action to remedy LCMC's and HCA's (collectively, "the Hospitals")[1] violations of the HSR Act. The Commission seeks an Order from this Court requiring the Hospitals to make the necessary filings under the HSR Act and an Order to maintain the assets of the acquired hospitals pending the federal government's review of those filings.

The HSR Act's premerger notification requirements provide the federal antitrust agencies (the FTC and the U.S. Department of Justice ("DOJ")) the opportunity to detect and investigate proposed mergers for potential anticompetitive consequences before they are consummated and, if necessary, to challenge illegal transactions before the assets of the merging firms are integrated. The HSR Act requires merging companies to notify the antitrust agencies of all acquisitions of voting securities or assets that exceed certain monetary thresholds unless a specific, enumerated exemption applies.

In this case, there is no dispute that the Hospitals consummated a transaction that exceeded the monetary thresholds for filing notifications under the HSR Act. And there is no dispute that the Hospitals never filed the required notifications. The Hospitals instead assert they are exempt from the requirements of the HSR Act due to the state action doctrine, which, while a

---

[1] To avoid confusion among the various actions filed by the FTC, LCMC, and HCA, we refer to the Respondents in the FTC's action—LCMC and HCA—as "the Hospitals."

judicially created affirmative defense to antitrust liability, is not one of the enumerated exemptions to the HSR Act. This case thus presents a narrow legal question: whether companies that have entered into an otherwise reportable transaction must file notifications under the HSR Act where they assert that the state action doctrine applies. The answer is yes. The Hospitals' unprecedented argument is contrary to the text of the HSR Act and would defeat Congress's intent that the federal government receive advance notice of certain mergers. The HSR Act allows the federal antitrust agencies to assess the legality of a merger—including any applicable defenses to liability, such as the state action doctrine—before the merger is consummated. Congress created specific, narrow statutory exemptions to this pre-merger filing requirement and empowered the FTC (with the DOJ's concurrence) to establish additional exemptions as necessary. None of those exemptions applies here. And no court has exempted an entity from the HSR Act's filing requirements based on a non-enumerated, implied exemption to the HSR Act.

Flouting the role Congress intended the federal antitrust agencies to play, the Hospitals unilaterally decided that the Louisiana Attorney General's issuance of a Certificate of Public Advantage ("COPA") exempted them from the HSR Act's filing requirements. This was wrong. It may turn out that the FTC—after its investigation—does not dispute that the COPA would create a valid state action defense to a substantive challenge to the Hospitals' transaction under Section 7 of the Clayton Act. But that question is irrelevant to the FTC's current action; this case is solely about whether the procedural requirements of the HSR Act apply to the Hospitals' transaction. At this stage, the FTC has no position on whether the Hospitals' transaction is illegal under Section 7 of the Clayton Act—that is, whether the transaction is anticompetitive because its effect "may be substantially to lessen competition or to tend to create a monopoly." 15 U.S.C. § 18. The FTC also has no position on whether the state action defense would protect the

Hospitals' transaction from antitrust liability in a future enforcement action following investigation. Nor could it. Because the Hospitals refused to file under the HSR Act, the FTC lacks the necessary information to investigate these questions; HSR filings from the Hospitals are the first step.

The Hospitals' unilateral refusal to abide by the HSR Act has implications beyond this transaction. If the Court were to accept the Hospitals' position, any state-regulated private party could ignore the HSR Act's requirements based on its self-serving determination—unverified by the federal antitrust agencies—that it satisfies the requirements of a state action defense. Such a ruling would deprive the federal antitrust agencies of the ability to investigate mergers, including applicable defenses, before they are consummated—the very purpose of the HSR Act.

The FTC respectfully requests that the Court grant this motion for summary judgment, hold that the Hospitals do not satisfy any exemption to the HSR Act's notification requirements, and enter the FTC's proposed orders compelling the Hospitals to file HSR Act notifications and requiring LCMC to maintain the assets acquired in the transaction pending the FTC's review of the merger under the HSR Act.

## THE HART-SCOTT RODINO ACT

Congress passed the HSR Act to give the federal antitrust agencies "a fair and reasonable opportunity to detect and investigate large mergers of questionable legality before they are consummated" and "win a premerger injunction—[]which is often the only effective and realistic remedy against large, illegal mergers—[]before the assets, technology, and management of the merging firms are hopelessly and irreversibly scrambled together." H.R. REP. NO. 94-1373, pt. 1, at 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2637, 2637. The HSR Act created a neutral process for premerger notification and investigation that does not require assessing beforehand whether

the proposed transaction is illegal under Section 7 of the Clayton Act. *See id.* Before 1976, the

federal antitrust agencies generally lacked advance notice of mergers. Thus, often the agencies

were forced to attempt to unwind illegal mergers after consummation, which made it exceedingly

difficult to obtain "meaningful relief." *Id.* pt. 3, at 8, *reprinted in* 1976 U.S.C.C.A.N. 2637,

2640-41; *see also Mattox v. FTC*, 752 F.2d 116, 119 (5th Cir. 1985) (The HSR Act "reflects a

congressional judgment that divestiture and other post-acquisition remedies were difficult,

expensive and sometimes futile."). Congress passed the HSR Act to address these problems.

The HSR Act requires merging companies to file premerger notification reports with the

FTC and DOJ before acquiring, directly or indirectly, any voting securities or assets above a

certain monetary threshold adjusted annually. 15 U.S.C. § 18a(a). Companies subject to the HSR

Act cannot consummate the transaction for at least 30 days after they have filed their

notifications. 15 U.S.C. §18a(b). The statute refers to this time frame as the "waiting period." *Id.*

The HSR Act applies to all mergers and acquisitions except as expressly prescribed by

the statute or federal regulations. Section 18a(c) of the HSR Act lists 12 express exemptions

from the notice-and-filing requirement. 15 U.S.C § 18a(c). Furthermore, Section 18a(d)

empowers the FTC, with the concurrence of the DOJ, to create additional exemptions through

the rulemaking process. 15 U.S.C § 18a(d). Through that rulemaking process, the FTC has

created an additional 28 exemptions to the HSR Act. 16 C.F.R. § 802.1-80.

If a merging firm fails to comply with the notification requirement of the HSR Act, on

application of the FTC or DOJ, a court "may order compliance" and "may grant such other

equitable relief as the court in its discretion determines necessary or appropriate." 15 U.S.C. §

18a(g)(2); *see also* 15 U.S.C. § 53(b) (court may grant equitable relief where "any person,

partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission").

## UNDISPUTED FACTS

LCMC is a non-profit corporation incorporated under the laws of Louisiana, with its principal place of business at 1100 Poydras Street, New Orleans, LA 70163. Petitioner Federal Trade Commission's Statement of Undisputed Facts ("SUF") ¶ 1. LCMC operates a network of hospitals in the greater New Orleans area. *Id.* LCMC had revenues over $2.2 billion and $3.7 billion in assets in 2021. SUF ¶¶ 1-2.

HCA is a for-profit corporation incorporated under the laws of Delaware with its principal place of business located at One Park Plaza, Nashville, TN 37203. SUF ¶ 3. HCA operates 182 hospitals in the United States and abroad, with revenues totaling approximately $60.2 billion in 2022. SUF ¶ 4.

On January 1, 2023, LCMC completed its acquisition of three HCA hospitals in the New Orleans area—Tulane Medical Center, Lakeview Hospital, and Lakeside Hospital—for approximately $150 million. SUF ¶ 5. On January 3, 2023, LCMC announced that it had finalized the acquisition. SUF ¶ 6.

In 2022 and early 2023, companies engaging in mergers or acquisitions had to file premerger notification reports of transactions between $101 million and $403.9 million in voting securities or assets, provided that the companies met the "size of person" test. SUF ¶ 7. The thresholds for the size of person test in January 2023 were $20.2 million for the smaller company and $202 million for the larger company based on total assets or net sales. *Id.*

The Hospitals' transaction met the financial thresholds for an HSR Act premerger notification filing. SUF ¶ 8. Neither LCMC nor HCA filed an HSR notification report or

accompanying materials with the FTC or the DOJ before or since consummating their transaction. SUF ¶ 9.

## LEGAL STANDARD

A "court should grant summary judgment when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). In this case, the only disagreement between the parties is a purely legal issue: whether companies that have entered into an otherwise reportable transaction must file notifications under the HSR Act where they assert that the state action doctrine applies.

## ARGUMENT

The HSR Act is straightforward: all companies engaging in transactions meeting certain financial thresholds must notify the federal government before they close the transaction unless it falls within an enumerated exemption. 15 U.S.C. § 18a(a) ("Except as exempted pursuant to subsection (c)" companies engaging in a transaction must abide by the notification and waiting period requirements); 15 U.S.C. § 18a(c)(1)-(12) (identifying exemptions). The Hospitals concede that their transaction met the HSR Act's financial filing thresholds. SUF ¶ 8. Because no exemption applies to their transaction, LCMC and HCA were each required to make a filing. Under the plain text of the statute, this should fully resolve the matter. *Infra*, § I.

Yet the Hospitals invite this Court to create a new, implied exemption to the HSR Act— an invitation the Court should reject. An implied exemption would represent an unprecedented extension of the state action doctrine, flouting the clear text of the HSR Act, Congress's intent in enacting the Act, and the Supreme Court's repeated admonition that the state action doctrine "is disfavored." *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225 (2013) (quoting *FTC v.*

*Ticor Title Ins. Co.*, 504 U.S. 621, 636 (1992)). It would also waste both judicial and federal agency resources; post-merger litigation over a fact-specific defense to a merger would become the norm—even where the FTC and DOJ might never have challenged the merger in the first place had the agencies been able to conduct an investigation into the applicability of a defense. The HSR Act exists precisely to ensure the orderly evaluation of mergers before they close, as it is difficult and disruptive to untangle merged companies; the Hospitals' requests would frustrate this important purpose. *Infra*, § II.

## I.   The Hospitals cannot carry their legal burden to establish that their transaction is exempted from the HSR Act.

The Hospitals have the burden of establishing they qualify for one of the exemptions to the notice-and-filing requirements of the HSR Act. *See FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948) ("the general rule of statutory construction [is] that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits"); *see also United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 366 (1967) (with respect to exceptions to Section 7 of the Clayton Act, "the burden of proof is on the defendant banks to establish that an anticompetitive merger is within the exception" at issue, as "[t]hat is the general rule where one claims the benefit of an exception to the prohibition of a statute") (citing *Morton Salt*); *Houston Aquarium, Inc. v. OSHRC*, 965 F.3d 433, 440 (5th Cir. 2020) ("As the party seeking to invoke an exemption from a legal requirement, the Aquarium has the burden of proving that the exemption applies.") (citing *StarTran, Inc. v. OSHRC*, No. 06-61032, 2008 WL 3342714, at *7 (5th Cir. Aug. 11, 2008)). The Hospitals have incorrectly claimed that their transaction fits within one of two exemptions to the filing requirements of the HSR Act: "transfers to or from a Federal agency or a State or political subdivision thereof" (15 U.S.C. § 18a(c)(4)); and "transactions specifically exempted from the antitrust laws by Federal

statute" (15 U.S.C. § 18a(c)(5)). *See* Opposition to FTC's Petition for Injunctive Relief, Dkt. 23, at 21-22.[2] The Hospitals cannot carry their burden to establish that either exemption applies here.

A.    **Section 18a(c)(4) does not exempt the Hospitals' transaction because it involves a transfer between private entities, not a transfer "to or from" a State.**

The exemption provided by Section 18a(c)(4)—"transfers to or from a Federal agency or a State or political subdivision thereof"—is facially inapplicable to the Hospitals' transaction. 15 U.S.C. §18a(c)(4). Neither of the Hospitals is a "State or political subdivision thereof." HCA and LCMC are both private corporations. Their transaction thus did not involve a transfer "to or from" Louisiana or any political subdivision of Louisiana. LCMC has admitted as much, categorizing "transactions like the Acquisition" as "[p]rivate conduct." Complaint for Declaratory Judgment, Dkt. No. 1, No. 23-cv-1305 (E.D. La.) (April 19, 2023) at ¶ 8.

The Hospitals' position appears to be that because their COPA application was approved by the Louisiana Attorney General, either HCA or LCMC is for all practical purposes a "State or political subdivision thereof" under Section 18a(c)(4). That argument cannot be squared with the HSR Act and its implementing regulations. The HSR Act's filing requirement applies specifically to "persons." 15 U.S.C. § 18a(a) ("Except as exempted pursuant to subsection (c), no person shall acquire, directly or indirectly, any voting securities or assets of any other person, unless . . . ."). Congress empowered the FTC and DOJ to define the terms used in the HSR Act, *see* 15 U.S.C. § 18a(d)(2)(A), and they did so. Although states, including their agencies and political subdivisions, are expressly excluded from the definitions of "persons" or "entities" subject to the HSR Act, corporations and unincorporated entities engaged in commerce are

---

[2] The Opposition originally filed by the Hospitals in the U.S. District Court for the District of Columbia is referred to herein as "D.C. Opp."

specifically carved out of this exclusion. *See* 16 C.F.R. § 801.1(a)(2) ("the term entity shall not include . . . the United States or any of the States thereof, or any political subdivision or agency of either (*other than a corporation or unincorporated entity engaged in commerce*)" (emphasis added)).[3] Construing Section 18a(c)(4) such that HCA or LCMC is a "State or a political subdivision thereof" would be directly at odds with the HSR Act's implementing regulations. In short, under any reasonable construction, the Section 18a(c)(4) exemption does not apply to the Hospitals' transaction.

      The Hospitals' position is also contrary to how courts apply the state action doctrine itself. The application of the state action doctrine to private actors has a separate framework under the law. *See California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 106 (1980) (applying a two-part test that requires, among other things, showing that the private party is actively supervised by the state). Even when properly applied, the state action defense does not transform private actors into a "State or political subdivision thereof." 15 U.S.C. § 18a(c)(4). In *Louisiana Real Estate Appraisers Board v. FTC*, for example, the Fifth Circuit recognized the distinction between state government entities and private parties invoking the doctrine, holding that although the Board was entitled to defend itself under the state action doctrine, it invoked the doctrine only "as a private party," not as a state agency. 976 F.3d 597, 604 (5th Cir. 2020). Accordingly, the court denied the private defendant's request for

---

[3] § 801.1 defines "person" to mean an "ultimate parent entity and all entities which it controls directly or indirectly," that is, an entity that is not controlled by any other entity. 16 C.F.R. § 801.1(a)(1). The Hospitals do not assert that Louisiana or any other entity "controls" either HCA or LCMC within the meaning of the HSR Act. *See* 16 C.F.R. § 801.1(b)(1), (2) ("Control" of a corporation exists if another person has "the contractual power presently to designate 50 percent or more of the directors of a for-profit or not-for-profit corporation," or in the case of a for-profit corporation can also consist of holding "50 percent or more of the outstanding voting securities.").

interlocutory review. *Id.* at 604-05; *see also Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 294 (5th Cir. 2000) (holding that while sovereign immunity concerns underlying the state action doctrine counsel in favor of granting interlocutory review for state entities, "status as a private defendant does not implicate these concerns").

Although the Hospitals have invoked terms like "State-controlled merger," D.C. Opp. (Dkt. 23) at 2, 23, merger or conduct "attributable to the State," *id.* at 2, 9, 10, 12, 13, 17, 18, 23, 24, 26, 27, and "the State's own" merger, *id.* at 13, 22, those are not terms of art. *Louisiana Real Estate Appraisers Board* and *Acoustic Systems* are directly on point and reinforce that the Hospitals are neither a state nor a political subdivision of a state; they are attempting to invoke the state action doctrine as private firms. It is irrelevant whether the Hospitals might successfully defend their transaction through the state action doctrine in some future enforcement action. At no point in that analysis would the state action doctrine change the Hospitals from private economic actors into "a State or political subdivision thereof" that would qualify for an exemption under Section 18a(c)(4) of the HSR Act. 15 U.S.C. § 18a(c)(4).

**B.      Section 18a(c)(5) does not apply because no federal statute specifically exempts the Hospitals' transaction from the antitrust laws.**

The exemption under Section 18a(c)(5)—"transactions specifically exempted from the antitrust laws by Federal statute"—is also facially inapplicable to the Hospitals' transaction. 15 U.S.C. §18a(c)(5). Indeed, this provision shows conclusively that the judicially created state action defense does not apply to the HSR Act. There is no federal statute that exempts transactions from the antitrust laws because of the state action doctrine.

First, the state action defense is not a statutory exemption; it is a judicial doctrine created by the Supreme Court in *Parker v. Brown,* 317 U.S. 341 (1943). *See Earles v. State Bd. of Certified Pub. Accts. of Louisiana*, 139 F.3d 1033, 1040 (5th Cir. 1998) ("The state-action

exemption from federal antitrust liability was first recognized in the case of *Parker v. Brown*. . . .
We begin, as do all of the Supreme Court's opinions on state action, with a look back to *Parker's*
first principles."); *LimeCo, Inc. v. Div. of Lime of Mississippi*, 546 F. Supp. 868, 869 (N.D. Miss.
1982) ("Although the Sherman Act does not expressly contain a state action exemption, the
Supreme Court in [*Parker*] first implied this exemption . . . ."). Indeed, the Supreme Court itself
references *Parker*—its own precedent, not any federal statute—when describing the state action
doctrine. *See, e.g.*, *N.C. State Bd. of Dental Exam'rs*, 574 U.S. 494, 508 (2013) (referencing
"*Parker* immunity"); *see also Midcal*, 445 U.S. at 97 (referring to "the 'state action' doctrine of
*Parker v. Brown*"). And the Supreme Court has likewise made it clear that the state action
doctrine of *Parker* is not a statutory exemption but instead "is an *implied* exemption to the
antitrust laws." *S. Motor Carriers Rate Conference Inc. v. United States*, 471 U.S. 48, 55, n.18
(1985) (emphasis added). To construe Section 18a(c)(5) to encompass the judicially created state
action doctrine would violate basic principles of statutory construction, as it would ignore the
words "by Federal statute" in the text. *See, e.g.*, *In re Crocker*, 941 F.3d 206, 220 (5th Cir. 2019),
*as revised* (Oct. 22, 2019) ("Courts have a 'duty to give effect, if possible, to every clause and
word of a statute.'") (quoting *Bennett v. Spear*, 520 U.S. 154, 173 (1997)).

Second, Section 18a(c)(5) is limited to transactions that are "specifically exempted" by
statute. 15 U.S.C §18a(c)(5). Only an unnatural and strained reading would stretch that language
to encompass an implicit common law defense. "'Specifically' can mean 'explicitly, particularly,
[or] definitely,' thereby contrasting a *specific* reference with an *implicit r*eference made by more
general language to a broader topic." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25,
38 (1996) (citation omitted). Yet the Hospitals have argued that Section 18a(c)(5) encompasses
the implied *Parker* doctrine on the basis that "'[s]pecifically' exempted does not mean

11

'expressly' exempted," and that "State action is specific, even if not express." D.C. Opp. (Dkt. 23) at 22. This argument should be rejected. The Hospitals' attempt to stretch the language of Section 18a(c)(5) contravenes basic principles of statutory construction. *See, e.g.*, *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476-77 (2003) ("Absent a statutory text or structure that requires us to depart from normal rules of construction, we should not construe the statute in a manner that is strained and, at the same time, would render a statutory term superfluous."); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (quotation marks and citation omitted)).

## II.     The Court should not create an implied exemption to the HSR Act's requirements.

With no codified exemption to rely upon, the Hospitals apparently intend to encourage the Court to invent an implied exemption by extending the state action doctrine to the procedural requirements of the HSR Act. Such an implied exemption would conflict with basic statutory construction principles and would contradict the text and structure of the HSR Act—which already contains 40 enumerated exemptions (12 statutory exemptions and 28 additional exemptions promulgated through FTC rulemaking). Furthermore, it would contradict appellate court decisions holding that an entity cannot avoid investigation by asserting a defense to the underlying conduct.

### A.     The HSR Act's text and structure preclude an implied exemption to the HSR Act under the state action doctrine.

"It is not the job of the courts to legislate, and the Supreme Court has counseled that where the statutory language is plain, 'the sole function of the court is to enforce it according to its terms.'" *Matter of Greenway*, 71 F.3d 1177, 1180 (5th Cir. 1996) (citing *Ron Pair*

*Enterprises*, 489 U.S. at 241; *see also Lopez v. Sentrillon Corp.*, 749 F.3d 347, 349 (5th Cir. 2014), *as revised* (Apr. 28, 2014) (same). In particular, "when Congress provides exceptions in a statute, it does not follow that courts have authority to create others." *Parada v. Garland*, 48 F.4th 374, 377 (5th Cir. 2022) (quoting *United States v. Johnson*, 529 U.S. 53, 58 (2000)). It is thus not surprising that no court has found any implied exemption to the HSR Act's filing requirements. This Court should not be the first.

The HSR Act's text leaves no room for court-created exemptions. The HSR Act's "Filing" provision states that "*[e]xcept as exempted pursuant to subsection (c)*, no person" shall acquire the assets of another person unless both persons file notification and the waiting period has expired. 15 U.S.C. § 18a(a) (emphasis added). The HSR Act contains 12 exemptions, 15 U.S.C. § 18a(c)(1)-(12), including an exemption for "transfers to or from a Federal agency or a State or political subdivision thereof." 15 U.S.C. § 18a(c)(4). If Congress had intended that the HSR Act exempt a broader set of private transactions that state governments had "approved" or "endorsed," then Congress would have done so expressly. *See Parada*, 48 F.4th at 377 ("The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.") (quoting *Johnson*, 529 U.S. at 58); *see also Hillman v. Maretta*, 569 U.S. 483, 496 (2013) ("We have explained that '[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.'") (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)). Moreover, Congress also empowered the FTC (with the DOJ's concurrence) to establish additional exemptions to the HSR Act, 15 U.S.C. §§ 18a(c)(12), (d)(2)(B), and the FTC has established 28 such exemptions, 16 C.F.R. § 802.1-80. None of them exempts merging firms that claim entitlement to a state action defense.

13

Indeed, the HSR Act's enumerated exemptions themselves further undermine the Hospitals' argument for an implied exemption under the state action doctrine. Across the board, the HSR Act's exemptions describe the *nature* of assets at issue or other specific *characteristics* of transactions. The exemptions include, for example: "acquisitions of goods or realty transferred in the ordinary course of business," "acquisitions of bonds, mortgages, deeds of trust, or other obligations which are not voting securities," and certain acquisitions of securities, 15 U.S.C. § 18a(c)(1)-(3), (9)-(10); *see also* 16 C.F.R. § 802.2-3 (exempting "[c]ertain acquisitions of real property assets" and "[a]cquisitions of carbon-based mineral reserves"). There is not a single exemption to filing—in the statute or rules—whose applicability requires a fact-intensive assessment of whether the proposed transaction may ultimately violate the antitrust laws or may be protected from liability under those laws by a defense, such as the state action doctrine.

The HSR Act's text stands in contrast with that of the Sherman Act, the statute the Supreme Court construed in creating an implied state action defense. Unlike the HSR Act, the Sherman Act, 15 U.S.C. § 1, contains no explicit exemptions. As previously discussed, the Supreme Court first articulated the state action doctrine in *Parker*, where it considered "whether the Sherman Act prohibits anticompetitive actions of a State." *Patrick v. Burget*, 486 U.S. 94, 99 (1988). Lacking specific guidance from Congress and the antitrust agencies, the Court in *Parker* noted that "the Sherman Act makes no mention of the state as such." 317 U.S. at 351. In contrast, the HSR Act and its implementing regulations contain explicit exemptions addressing transactions involving states. In prior briefing, the Hospitals argued incorrectly that the HSR Act "contains the same ambiguity in the word 'person' that the Court relied on in *Parker* to exclude state action from the Sherman Act." D.C. Opp. (Dkt. 23) at 17. As explained above, however, the term "person" is a defined term under the HSR Act's implementing regulations. 16 C.F.R. §

14

801.1(a)(1). The Hospitals' argument for an implied state action doctrine exemption to the HSR

Act asks the Court to ignore those regulations and manufacture ambiguity where none exists.

### B.   The state action doctrine is a shield only against antitrust liability, not a means to escape procedural obligations.

The notification-and-waiting requirements of the HSR Act are procedural obligations not

subject to a state action defense. "[A] failure to give notice of a merger that does not otherwise

violate the antitrust law" is "a purely procedural violation of the HSR premerger notification

requirement." *United States v. Blavatnik*, 168 F. Supp. 3d 36, 44 (D.D.C. 2016); *see also*

*Commonwealth of Pa. v. Mid-Atl. Toyota Distribs, Inc.*, 704 F.2d 125, 128 (4th Cir. 1983)

(referring to HSR Act as "purely procedural in its effect") (footnote and citations omitted);

*United States v. Loew's Inc.*, 705 F. Supp. 878, 891 (S.D.N.Y. 1988) (referring to HSR Act as

"purely procedural in nature"). Under the HSR Act, notification is required for *all non-exempt*

*transactions and entities* that meet the thresholds. *See* 15 U.S.C. § 18a(a) (requiring a filing for

reportable transactions "[e]xcept as exempted pursuant to subsection (c)"). Companies engaging

in proposed transactions covered by the HSR Act must abide by these requirements regardless of

whether that proposed transaction, if consummated, would be anticompetitive or illegal. *See id.*[4]

The HSR Act's notification-and-waiting requirements—which are contained in Section

7A of the Clayton Act—provide a framework for the federal antitrust agencies to investigate

potentially anticompetitive mergers. The inclusion of investigative tools within the Clayton Act

---

[4] Tellingly, the overwhelming majority of transactions filed under the HSR Act proceed without even a request for additional information, much less a legal challenge. In FY2021, 7.9% of HSR-reported transactions were cleared to one of the agencies for investigation and in only 1.9% did an agency seek more information from the merging companies. FED. TRADE COMM'N AND THE DEP'T OF JUSTICE ANTITRUST DIV., HART-SCOTT-RODINO ANNUAL REPORT, FISCAL YEAR 2021, Exhibit A, Table 1, https://www.ftc.gov/system/files/ftc_gov/pdf/p110014fy2021hsrannualreport.pdf.

is analogous to FTC subpoenas issued pursuant to the FTC Act. In prior briefing, the Hospitals conceded that administrative subpoenas issued under the FTC Act are not subject to the state action defense. *See* D.C. Opp. (Dkt. 23) at 26 ("[A]dministrative subpoenas issued under the FTC Act are not antitrust laws" subject to the state action defense.). To be sure, the FTC Act also contains substantive provisions that prohibit anticompetitive conduct. *See, e.g.*, 15 U.S.C. § 45(a)(1) ("Unfair methods of competition in or affecting commerce . . . are hereby declared unlawful."). Accordingly, just as the state action doctrine does not apply to procedural provisions of the FTC Act, it does not apply to the purely procedural HSR Act merely because it is found within the Clayton Act.

The state action doctrine serves as a defense to liability for anticompetitive conduct. As the Supreme Court explained, the state action doctrine provides a potential defense to liability "only when it is clear that the challenged *anticompetitive conduct* is undertaken pursuant to a regulatory scheme that is the State's own." *Phoebe Putney*, 568 U.S. at 225 (internal citation and quotation marks omitted) (emphasis added); *see also Dental Exam'rs*, 574 U.S. at 503 (finding that the state action defense shields "anticompetitive conduct by the States when acting in their sovereign capacity") (citation omitted). Applying the state action doctrine, a defense to liability for anticompetitive conduct, to the HSR Act, a statute that does not impose liability for anticompetitive conduct, makes no sense.

Beyond the plain reading of the HSR Act, the goals of the state action doctrine are not implicated by the HSR Act. Under the state action doctrine, federal antitrust liability does not cover the "States' own anticompetitive policies out of respect for federalism," recognizing that, at times, state regulatory goals may "conflict[]" with "the Nation's commitment to a policy of robust competition." *Dental Exam'rs*, 574 U.S. at 504-05; *see also Parker*, 317 U.S. at 352

(interpreting the Sherman Act as not prohibiting "[t]he state . . . as sovereign" from "impos[ing] the restraint [of trade] as an act of government").

The Hospitals' argument that the HSR Act's waiting period "would egregiously interfere with Louisiana's COPA program," D.C. Opp. (Dkt. 23) at 20, is misplaced. The notice-and-waiting requirements of the HSR Act do not implicate the federalism concerns that animate the state action doctrine because they do not prohibit any anticompetitive conduct that the state may have a sovereign right to displace with regulation. The Hospitals' argument disregards Congress's judgment that the benefits of a waiting period—even for transactions that go unchallenged—outweigh the risks of attempting to unwind anticompetitive transactions after consummation.

### C.   State action is a defense to liability and cannot thwart an investigation.

Fifth Circuit case law is explicit that "the state action doctrine does not immunize private defendants from suit"; on the contrary, "the state action doctrine, if meritorious, provides only a defense against liability." *Acoustic Sys.* 207 F.3d at 292, 294 ; *see also Louisiana Real Estate*, 976 F.3d at 604 ("As a private party, the policy imperatives behind relieving the Board from suit as well as liability do not apply."). Because the state action doctrine is a defense to antitrust liability, invoking it here to protect LCMC and HCA from a procedural statute intended to allow for an investigation is misplaced and premature.

Multiple circuit courts have held that a target of an investigation cannot thwart that investigation by raising a defense to the underlying conduct. In *FTC v. Texaco, Inc.*, for example, the D.C. Circuit held that parties under investigation cannot "contest substantive issues in an [administrative subpoena] enforcement proceeding, when the agency lacks the information to establish its case, [because] administrative investigations would be foreclosed or at least

substantially delayed." 555 F.2d 862, 879 (D.C. Cir. 1977); *see also FTC v. Church & Dwight Co.*, 747 F. Supp. 2d 3, 7 (D.D.C. 2010) (same), *aff'd*, 665 F.3d 1312 (D.C. Cir. 2011). Here, the Hospitals have acknowledged that the FTC's subpoena power—a procedural aspect of the FTC Act—is not constrained by the state action defense. The requirements of the HSR Act are functionally no different; they do not impose antitrust liability, but merely facilitate investigation. Indeed, in *FTC v. Monahan*, the First Circuit addressed a target's improper effort to avoid investigation by raising the state action defense. 832 F.2d 688 (1st Cir. 1987). There, the FTC sent subpoenas to a state board of pharmacy to investigate whether the board's conduct violated the antitrust laws. *Id.* at 688. The board resisted based on a claimed state action defense, but the court held that it was improper to evaluate whether the state action defense applied before the FTC had the opportunity to investigate. *Id.* at 689. Then-Judge Breyer explained that "[w]e, like the FTC, must wait to see the results of the investigation before we know whether, or the extent to which, the activity falls within the scope of a 'clearly articulated and affirmatively expressed' state policy." *Id.*

Like the defendants in *Texaco* and *Monahan*, the Hospitals are required to provide information so that the FTC may conduct an investigation. And like the defendants in *Texaco* and *Monahan*, the Hospitals have refused, raising a defense to the merits of an antitrust claim— the same state action defense rejected in *Monahan*. For the same reason such a defense has no bearing on subpoena compliance, it has no bearing on compliance with HSR Act requirements to provide notification and information. *See Church & Dwight*, 747 F. Supp. 2d at 7 ("The 'substantive antitrust issues' raised by [defendants] have no bearing at the investigative stage, when it may be that no complaint will ever issue.").

The *Texaco* court's concern with parties asserting substantive defenses at the investigation phase applies with maximal force in the HSR Act context, where the FTC may never even learn of a transaction that is not reported or, as here, may only learn of the transaction after it has been consummated. By design, the HSR Act requires firms engaging in reportable transactions to file notification precisely because, absent such notification, "investigations would be foreclosed or at least substantially delayed" if the resolution of substantive defenses were a prerequisite to investigation. *Texaco*, 555 F.2d at 879. The FTC's action here illustrates the point perfectly. The Hospitals consummated their transaction on January 1, 2023, but the FTC did not learn of the transaction until months later. As a result, the FTC has not had a "fair and reasonable opportunity" to investigate the Hospitals' transaction before it closed and the assets began to scramble. H.R. REP. NO. 94-1373, pt. 1, at 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2637, 2637.

Ruling in the Hospitals' favor would therefore result in more instances where the FTC and DOJ are unaware of impending mergers and thus unable to determine whether a state action defense properly applies. Instead, merging companies would be able to unilaterally declare a *federal* defense satisfied merely by receiving a *state* COPA—a result contrary to the HSR Act as well as the state action doctrine itself. *See Ticor Title*, 504 U.S. at 633 ("[A] State may not confer antitrust immunity on private persons by fiat."); *Dental Exam'rs*, 574 U.S. at 510 (rejecting state designation of agencies as exempt from *Midcal's* active supervision requirement).

### III.    The Court should compel LCMC and HCA to file HSR notifications and issue a temporary asset maintenance order covering LCMC.

To remedy the Hospitals' failure to file a timely HSR Act notice with the federal antitrust agencies, the FTC requests that this Court issue the attached Proposed Order to Compel HSR Act Notifications ("Proposed Order to Compel"). A federal district court is empowered to "order compliance" with the notification requirements under the HSR Act when merging companies fail

to meet their obligations. 15 U.S.C. § 18a(g)(2)(A). The Proposed Order to Compel would require both LCMC and HCA to file HSR notifications within fourteen days of the Order's issuance.

In addition to ordering the Hospitals to comply with the HSR Act notification requirements, the FTC requests that this Court issue the attached Proposed Order to Maintain Assets. The HSR Act permits a federal district court to "grant such other equitable relief as the court in its discretion determines necessary or appropriate." 15 U.S.C. § 18a(g)(2)(C). To prevent any further scrambling of the assets acquired by LCMC while the FTC reviews the Hospitals' HSR notifications, the FTC respectfully requests the Court to enter, at the same time as the Proposed Order to Compel, the Proposed Order to Maintain Assets under its equitable authority.

The Proposed Order to Maintain Assets substantially mirrors the Order issued by the District Court for the District of Columbia on April 21, 2023, and agreed to by LCMC. The Proposed Order to Maintain Assets is narrowly tailored to preserve the competitive viability of and prevent further harm to the hospitals that LCMC acquired. In essence, the Proposed Order to Maintain Assets prevents LCMC from (1) making any irreversible changes to the competitive viability of the acquired hospitals (e.g., closing any facility or clinical service lines, or selling, encumbering, or permitting destruction of the facilities); (2) terminating staff members, including those key to the operation of the acquired hospitals; and (3) terminating contracts with insurers or forcing higher reimbursement rates for the larger network. The Proposed Order to Maintain Assets contains exceptions to the general preservation requirements if LCMC needs to conduct certain activities to provide safe patient care or to meet regulatory requirements. The Proposed Order to Maintain Assets would cover the duration of the HSR Act waiting period pursuant to 15 U.S.C. § 18a(b)(1).

## <u>CONCLUSION</u>

For the reasons stated above, the Commission respectfully requests that the Court grant
its motion, require the Hospitals to comply with the filing requirements under the HSR Act, and
further, under the equitable authority granted by statute, require the Hospitals to maintain the
assets of the former HCA hospitals, as contemplated in the attached proposed orders.


Dated: July 18, 2023                                    Respectfully submitted,

                                                        */s/ Mark Seidman*

                                                        Mark Seidman
                                                        Daniel J. Matheson
                                                        Adam Pergament
                                                        Stephen Rodger
                                                        Bureau of Competition
                                                        Federal Trade Commission
                                                        600 Pennsylvania Avenue, NW
                                                        Washington, DC 20580
                                                        Tel: (202) 326-3296