**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| **LOUISIANA CHILDREN'S MEDICAL CENTER, d/b/a LCMC HEALTH,**<br><br>**Plaintiff,**<br>v.<br><br>**ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,**<br><br>**Defendants.** | **CASE NO. 2:23-cv-01305-LMA-MBN**<br>**c/w 23-cv-1311**<br>**c/w 23-cv-1890**<br><br>**JUDGE LANCE M. AFRICK SECTION I**<br><br>**MAGISTRATE JUDGE MICHAEL B. NORTH DIVISION 5**<br><br>**REF CASE NO. 2:23-cv-01890** |

**FEDERAL TRADE COMMISSION'S OPPOSITION TO RESPONDENTS
LOUISIANA CHILDREN'S MEDICAL CENTER AND HCA HEALTHCARE, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Respondents Louisiana Children's Medical Center ("LCMC") and HCA Healthcare, Inc. ("HCA") (together, the "Hospitals") have moved this Court for summary judgment, Dkt. 75, in the Federal Trade Commission's ("FTC") action to remedy the Hospitals' violations of the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR Act"). The Court should deny the motion.

On January 1, 2023, LCMC acquired three hospitals owned by HCA. There is no dispute that the Hospitals' transaction met the monetary filing thresholds under the HSR Act, and that the Hospitals did not file notifications under the HSR Act or observe the statutorily required waiting period before closing their transaction. The only issue the Court needs to decide is whether the Hospitals were required to comply with the HSR Act before closing their transaction.

The starting point, of course, for evaluating the application of the HSR Act is the text of the HSR Act itself. The HSR Act contains 12 exemptions from notification-and-waiting period requirements, and the FTC has promulgated additional exemptions based on its statutory authority. The state action doctrine—a defense to substantive antitrust liability—is not among any of those exemptions, and the Hospitals' arguments to the contrary lack merit.

Rather than address the text of the HSR Act, the Hospitals ask this Court to *first* evaluate the fact-intensive question of whether their transaction has satisfied the elements of the state action doctrine, and *then* to decide whether such inquiry was even necessary in the first place— that is, whether the state action doctrine constitutes an exemption to the HSR Act. The Hospitals put the cart before the horse.

The HSR Act notification-and-waiting period requirements provide the federal antitrust agencies (the FTC and the U.S. Department of Justice ("DOJ")) upfront notification of certain large mergers, which affords the opportunity to detect and investigate proposed mergers *before* they are consummated and then, if necessary, to challenge illegal mergers before the assets of the merging firms are integrated. Under the HSR Act, notification is required for *all non-exempt transactions and entities* that meet the filing thresholds. *See* 15 U.S.C. § 18a(a) (requiring a filing for reportable transactions "[e]xcept as exempted pursuant to subsection (c)"). Companies engaging in proposed transactions covered by the HSR Act must abide by these requirements regardless of whether their proposed transaction would be illegal. *See id.* Requiring filing for all non-exempt reportable transactions is not an "expansionist reading of the statute" that only a "bureaucrat could love," as the Hospitals contend. *See* Hospitals' Mem. in Supp. of Summ. J. ("Hospitals' Mem."), Dkt. 75-1, at 22. It is what Congress prescribed in explicit terms.

The Hospitals' failure to file notifications before consummation under the HSR Act has thwarted the FTC's ability to investigate their transaction and their purported state action defense. In filing for summary judgment based on a self-serving, redacted, and otherwise incomplete record, the Hospitals seek to use their failure to file—and the corresponding absence of information the FTC would use to investigate the merger, including any potentially applicable state action defenses—to their advantage. The Court should not endorse such tactics.

The Hospitals' arguments likewise distract from the issue before the Court—whether the HSR Act required the Hospitals to file notifications—more than address it. As noted above, the HSR Act itself does not support an exemption for the state action doctrine, and, not surprisingly, no court has ever held as much. Rather than look to the text of the statute, the Hospitals ask the Court to find a state action exemption based on decisions applying the state action doctrine as a possible defense to substantive liability under the Sherman Act and Clayton Act, without regard to the context of those decisions. In doing so, the Hospitals suggest there is ambiguity in the text of the HSR Act and conflict between the HSR Act and Louisiana's Certificate of Public Advantage ("COPA") law. The Hospitals are wrong on both scores.

The FTC respectfully requests that the Court deny the Hospitals' motion for summary judgment.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

A "court should grant summary judgment only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

material fact is one which "might affect the outcome of the suit under the governing law." *Id.* at

248. "The district court's role in the summary judgment context is simply to identify, not to

resolve, questions of fact and to apply correctly the law . . . ." *Fritiofson v. Alexander*, 772 F.2d

1225, 1239 (5th Cir. 1985), *rev'd* on other grounds.

## ARGUMENT

**I.**    **The Hospitals' arguments that the state action doctrine exempts their transaction from the HSR Act are contrary to the clear text of the HSR Act.**

There is no dispute that the Hospitals' transaction met the monetary filing thresholds

under the HSR Act, and that the Hospitals did not file notifications under the HSR Act or

observe the statutorily required waiting period before closing their transaction. LCMC Answer,

Dkt. 52, ¶ 9; HCA Answer, Dkt. 54, ¶ 9. The Hospitals bear the burden of showing that they

qualify for an exemption under the HSR Act. *See FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45

(1948) ("the general rule of statutory construction [is] that the burden of proving justification or

exemption under a special exception to the prohibitions of a statute generally rests on one who

claims its benefits"); *Houston Aquarium, Inc. v. OSHRC*, 965 F.3d 433, 440 (5th Cir. 2020) ("As

the party seeking to invoke an exemption from a legal requirement, the Aquarium has the burden

of proving that the exemption applies.") (citing *StarTran, Inc. v. OSHRC*, No. 06-61032, 2008

WL 3342714, at *7 (5th Cir. Aug. 11, 2008)). The Hospitals have not satisfied and cannot satisfy

that burden. The Hospitals are each a "person" within the meaning of the definitions of the HSR

Act and none of the enumerated exemptions applies to the Hospitals' transaction.

Instead, the Hospitals ask this Court to create a new, implied exemption to the HSR Act

filing requirements because Congress did not expressly discuss the application of the HSR Act to

what the Hospitals term "state-controlled mergers." Hospitals' Mem. at 3, 14, 17. Not

surprisingly, the Hospitals' proposed extension of the state action doctrine to the HSR Act is unsupported by any precedent.

Contrary to the Hospitals' arguments, the HSR Act's application to the Hospitals' transaction is straightforward, and it presents no conflict with Louisiana's regulatory program. Enforcing the HSR Act does not "effectively nullify the State's COPA program." *Id.* at 16. The HSR Act does not impose antitrust liability on *any* transaction, including COPA-approved mergers. The determination of antitrust liability—including the application of any state action or other defense—follows an investigation undertaken by the FTC or DOJ. It would make no sense for that legal and factual analysis to be a condition precedent to an HSR Act filing. Accordingly, this Court should find that the state action doctrine does not exempt private actors from the notification-and-waiting period requirements of the HSR Act.

**A.    The Hospitals cannot carry their legal burden to establish an exemption from the HSR Act.**

As in prior briefing, the Hospitals incorrectly claim that their transaction fits within one of two exemptions to the filing requirements of the HSR Act: "transfers to or from a Federal agency or a State or political subdivision thereof," 15 U.S.C. § 18a(c)(4); and "transactions specifically exempted from the antitrust laws by Federal statute," *id.* § 18a(c)(5). Hospitals' Mem. at 18-19. The FTC has previously explained why the Hospitals cannot meet their burden of showing that one of those exemptions applies. *See* Mem. in Supp. of FTC Mot. for Summ. J. ("FTC Mem."), Dkt. 71-1, at 8-12. In short, both exemptions are facially inapplicable to the Hospitals' transaction. *See id.*

The exemption provided by Section 18a(c)(4)—"transfers to or from a Federal agency or a State or political subdivision thereof"—does not apply to the Hospitals' transaction because neither of the Hospitals is a "State or political subdivision thereof." LCMC and HCA are both

5

private corporations. LCMC Answer, Dkt. 52, ¶ 2; HCA Answer, Dkt. 54, ¶ 3. Their transaction

thus did not involve a transfer "to or from" Louisiana or any political subdivision of Louisiana.

FTC Mem. at 8-10. As the FTC previously explained, the concept of a "state-controlled" merger

is not a term of art, and therefore the Hospitals' suggestion that they be treated as a state or

political subdivision runs headlong into binding Fifth Circuit precedent. *See id.* at 9-10 (citing

*La. Real Est. Appraisers Bd. v. FTC*, 976 F.3d 597, 604-05 (5th Cir. 2020) and *Acoustic Sys.,*

*Inc. v. Wenger Corp.*, 207 F.3d 287, 294 (5th Cir. 2000)). The exemption in Section 18a(c)(4)

simply does not apply here.

The exemption under Section 18a(c)(5)—"transactions specifically exempted from the

antitrust laws by Federal statute"—is also facially inapplicable to the Hospitals' transaction.

First, the state action defense is not a statutory exemption; it is a judicial doctrine created by the

Supreme Court in *Parker v. Brown,* 317 U.S. 341 (1943). *See Earles v. State Bd. of Certified*

*Pub. Accts. of La.*, 139 F.3d 1033, 1040 (5th Cir. 1998) ("The state-action exemption from

federal antitrust liability was first recognized in the case of *Parker v. Brown*. . . . We begin, as do

all of the Supreme Court's opinions on state action, with a look back to *Parker*'s first

principles."); *see also* FTC Mem. at 10-11. Second, Section 18a(c)(5) is limited to transactions

that are "specifically exempted" by federal statute. 15 U.S.C §18a(c)(5). Only an unnatural and

strained reading would stretch that language to encompass an implicit common law defense. *See*

FTC Mem. at 11-12. The Hospitals' attempt to stretch the language of Section 18a(c)(5)

contravenes basic principles of statutory construction. *See, e.g.*, *Dole Food Co. v. Patrickson*,

538 U.S. 468, 476-77 (2003) ("Absent a statutory text or structure that requires us to depart from

normal rules of construction, we should not construe the statute in a manner that is strained and,

at the same time, would render a statutory term superfluous."); *see also* FTC Mem. at 12.

Accordingly, the exemption in Section 18a(c)(5) also does not apply here.

In sum, with no dispute that the Hospitals' transaction met the monetary filing thresholds under the HSR Act, and no dispute that the Hospitals failed to file notifications under the HSR Act or observe the statutorily required waiting period before closing their transaction, LCMC Answer, Dkt. 52, ¶ 9; HCA Answer, Dkt. 54, ¶ 9, the Hospitals failed to meet their burden to prove that their transaction satisfied an exemption to the HSR Act.

**B.    The Hospitals seek to inject ambiguity into the text of the HSR Act where none exists.**

Without a statutory exemption that would apply to their transaction, the Hospitals argue that they and their transaction somehow fall outside of the HSR Act altogether. Hospitals' Mem. at 13-18. In doing so, the Hospitals conjure up ambiguity in the HSR Act that is not there, including by falsely suggesting that neither LCMC nor HCA is a "person" to which the HSR Act applies. *Id.* at 17.

The HSR Act applies to transactions meeting certain monetary thresholds by a "person," which each of the Hospitals unambiguously is under the HSR Act. Congress empowered the FTC and DOJ to define the terms used in the HSR Act, *see* 15 U.S.C. § 18a(d)(2)(A), and they defined the term "person" to mean "an ultimate parent entity and all entities which it controls directly or indirectly," that is, an entity that is not controlled by any other entity. 16 C.F.R. § 801(a)(1). While the Hospitals repeatedly label their transaction a "state-controlled merger," *e.g.,*

Hospitals' Mem. at 17, they do not, and cannot, assert that the State of Louisiana or any other entity "controls" LCMC or HCA within the meaning of the HSR Act.[1]

Each of the Hospitals is unambiguously an "entity" under the HSR Act. Each is a corporation, LCMC Answer ¶ 2; HCA Answer ¶ 3, and the definition of "entity" explicitly includes a "corporation." 16 C.F.R. § 801.1(a)(2). Although the definition of "entity" expressly excludes "the United States, any of the States thereof, or any political subdivision or agency of either (other than a corporation or unincorporated entity engaged in commerce)," 16 C.F.R. § 801.1(a)(2), neither LCMC nor HCA is a state or a political subdivision or agency of a state. In short, under the text of the HSR Act and implementing regulations, the Hospitals are each an "entity" and a "person" subject to the HSR Act notification-and-waiting period requirements.

Despite the clear applicability of the HSR Act to the Hospitals and their transaction, the Hospitals argue that the term "person" is ambiguous based on a false analogy to *Parker*. The Hospitals argue that under *Parker*, "the phrase '[e]very person' in the Sherman Act did not include States or 'action directed by a state,'" and this Court should extend that interpretation to the HSR Act. Hospitals' Mem. at 17 (citing *Parker*, 317 U.S. at 351 ("The Sherman Act . . . gives no hint that it was intended to restrain state action or official action directed by a state.")). Even assuming that the Supreme Court's holding in *Parker* turned on the word "person," that logic is flawed.

In *Parker*, lacking specific guidance from Congress and the antitrust agencies, the Court noted that "the Sherman Act makes no mention of the state as such." 317 U.S. at 351. In contrast, the HSR Act and its implementing regulations *do* contain explicit definitions and exemptions

---

[1] *See* 16 C.F.R. § 801.1(b)(1), (2) ("Control" of a corporation means "[h]aving the contractual power presently to designate 50 percent or more of the directors of a for-profit or not-for-profit corporation," or "[h]olding 50 percent or more of the outstanding voting securities").

addressing the applicability of the HSR Act to states. *See* 16 C.F.R. § 801.1(a). Just as the

Supreme Court did in *Parker* in construing the Sherman Act, 317 U.S. at 351, the Court here

should look to the text and definitions of the HSR Act. *See, e.g.*, *Meese v. Keene*, 481 U.S. 465,

484-485 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated

meanings of that term.").

As the FTC described in prior briefing, the Hospitals attempt to blur the line between

states and private actors, using terms such as "state-controlled merger" that appear nowhere in

the HSR Act. *See, e.g.*, Hospitals' Mem. at 17 ("Neither the statute nor the regulation speaks to

the issue here: whether state-controlled mergers are exempt."). The Hospitals' attempt to blur the

line is contrary to controlling Fifth Circuit precedent evaluating state action claims, as the FTC

previously explained. *See* FTC Mem. at 9-10. The fact that a private entity may seek to defend a

substantive antitrust claim by invoking the state action doctrine does not transform that entity

into a state. *See id.* (citing *La. Real Est. Appraisers Bd.*, 976 F.3d at 604 and *Acoustic Sys.*, 207

F.3d at 294); *see also N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494, 503-04 (2015)

("*Parker* immunity is not unbounded").

Relying on the same purported ambiguity in the term "person," the Hospitals also argue

that, under *Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48 (1985),

the Court should not apply the HSR Act to them absent a "clear statement" from Congress.

Hospitals' Mem. at 8-9. Indeed, the Hospitals assert their *Motor Carriers* "clear statement"

argument throughout their brief in arguing for a state action doctrine exemption to the HSR Act.

*Id.* at 2-3, 8-9, 14-15, 17-19, 21, 23, 25. The Hospitals' reliance on *Motor Carriers* is premised

on the same false analogy to *Parker* the Hospitals contend shows ambiguity in the word "person"

under the HSR Act. *Compare id.* at 9 (arguing that the Supreme Court first applied the principle

in *Parker*, where the phrase "[e]very person" was "insufficiently clear"), *with id.* at 17 (arguing

that the state action doctrine was applied in *Motor Carriers* "because the Sherman Act lacks a

clear statement that it applies to States").

 *Motor Carriers* does not apply here. In that case, which did not involve a merger (and

hence did not involve the HSR Act), the government alleged that the defendant rate bureaus

violated the Sherman Act by conspiring with their members to fix rates for the intrastate

transportation of general commodities. 471 U.S. at 52-53. In response to the challenged

anticompetitive conduct, the rate bureaus raised the state action doctrine as a defense to antitrust

liability under the Sherman Act. *Id.* at 53. The Court affirmed that the two-part test articulated in

*California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980), applies to

private entities, and that "a state policy that expressly permits, but does not compel,

anticompetitive conduct may be 'clearly articulated' within the meaning of *Midcal*." *Motor*

*Carriers*, 471 U.S. at 61. There is no dispute that the state action doctrine may apply to private

entities under the Sherman Act, provided that the *Midcal* test is satisfied, when such entities are

sued for substantive violations of the antitrust laws.

 As explained above, there is no ambiguity in the term "person" under the HSR Act.

"[W]here the statutory language is plain, 'the sole function of the court is to enforce it according

to its terms.'" *Matter of Greenway*, 71 F.3d 1177, 1180 (5th Cir. 1996) (citing *United States v.*

*Ron Pair Enters.*, 489 U.S. 235, 241 (1989)); *see also Lopez v. Sentrillon Corp.*, 749 F.3d 347,

349 (5th Cir. 2014), *as revised* (Apr. 28, 2014) (same); *see also Salinas v. United States*, 522

U.S. 52, 60 (1997) (noting clear statement principle does not apply when a statute is

unambiguous, and a statute "can be unambiguous without addressing every interpretive theory

offered by a party"). If any conflict did exist between the HSR Act and Louisiana's COPA

regime—which, as explained below, it does not—the clarity of the key terms in HSR Act would prevail.

### C.    The HSR Act does not conflict with principles of federalism and does not inhibit Louisiana's COPA program.

The Hospitals' reliance on *Motor Carriers* is also premised on a conflict between the HSR Act and the Louisiana COPA statute that does not exist. Hospitals' Mem. at 14 (arguing that applying the HSR Act to the Hospitals' transaction would "compromise the States' ability to regulate their domestic commerce"). Applying HSR Act requirements to the Hospitals' transaction in no way nullifies or inhibits Louisiana's ability to issue a COPA or regulate the Hospitals' activity in the future. Nothing in the HSR Act prevents or impedes the Louisiana AG from implementing a COPA pursuant to Louisiana state law.[2]

The Hospitals argue that the HSR Act—in particular the 30-day waiting period[3]—would frustrate Louisiana's COPA program, *id.* at 21-22, and that the FTC's enforcement action "illustrate[s] the disruption to state COPA programs that would occur if the state action doctrine did not apply." *Id.* at 16. Nothing in the record supports these claims. To the contrary, the Hospitals' doomsaying rings hollow, as it is premised on the notion that observing the 30-day

---

[2] To the extent the Louisiana AG is concerned that the FTC's Proposed Order to Maintain Assets would conflict with its implementation of the COPA agreement with the Hospitals, it has identified no specific concerns. The Proposed Order to Maintain Assets is drafted to ensure that the Hospitals' assets are not irreversibly altered but also to allow effective patient care to continue. In any event, such concern from the Louisiana AG would apply to the remedy, not the applicability of the HSR Act to the Hospitals' transaction.

[3] Contrary to the Hospitals' claims, Hospitals' Mem. at 6, the FTC does not control the length of the HSR Act's statutory waiting period. The statutory waiting period is 30 days. 15 U.S.C. § 18a(b)(1)(B). The waiting period can be extended if the FTC issues a request for additional information, but, absent a court order, the extended waiting period expires 30 days following parties' compliance with the information requests. *Id.* § 18a(e)(2). To be clear, the FTC has not decided whether it would need to request additional information from the Hospitals to evaluate their transaction.

waiting period would, among other things, have delayed consummation of their transaction. The HSR Act regulations are clear, however, that merging companies may submit premerger notification filings under Section 7A(b) of the HSR Act prior to executing definitive agreements. 16 C.F.R. 803.5(b). In this case, LCMC executed a letter of intent in January 2022 that set forth the initial terms of the transaction, almost a year before LCMC received COPA approval, and could have filed at that time. Appl. for COPA, Dkt. 75-4, Ex. A at C-2, C-3. The Hospitals could have made an HSR filing during the nearly eight months it took them to reach agreement on the transaction. *See id.* at C-3. The Hospitals also could have filed when they submitted their COPA application to the Louisiana Department of Justice on October 10, 2022, or when they supplemented their application in November 2022, if not earlier. Statement of Undisputed Facts in Supp. of Resp'ts' Mot. for Summ. J., Dkt. 75-2 ¶¶ 13, 21. Nothing prevented the Hospitals from submitting a premerger notification filing under the HSR Act before consummating their transaction. They simply chose not to do so, and the present situation is their own doing.[4] In short, the asserted conflict between the HSR Act and Louisiana's COPA program arose due to the Hospitals' actions, not due to the FTC's enforcement of the HSR Act.

The Hospitals also complain on federalism grounds that HSR Act compliance is costly and burdensome, Hospitals' Mem. at 6, 14, 16, but those arguments do not bear on federalism. Those who are subject to the HSR Act—here, the Hospitals, not the state—bear the cost of HSR Act compliance and any penalties for failure to comply.[5] Moreover, the Hospitals have conceded

---

[4] Because the Hospitals decided not to comply with the HSR Act, there is no basis for their complaint that the FTC's enforcement action "illustrates the disruption to state COPA programs that would occur if the state action doctrine did not apply." Hospitals' Mem. at 16. Moreover, the Hospitals' concern with the supposed "deleterious effects of the requested injunction," *id.*, do not bear on whether they violated the HSR Act. At most, it bears on the FTC's requested remedy.

[5] Any concern from the Hospitals about potential penalties for violating the HSR Act is inapposite to the FTC's action, which seeks no penalties.

that, if the FTC or DOJ were to propound a subpoena, they would be obligated to comply, *id.* at 22, with the costs that would impose on the Hospitals. And they have not asserted, let alone demonstrated, that subpoena compliance would be less costly than HSR Act compliance.

> **D.   The Hospitals' arguments for an extension of the state action doctrine to the HSR Act lack merit.**

The Hospitals next rely on *Phoebe Putney*, *Motor Carriers*, and *Hunnicutt v. Tafoya-Lucero* to support their misguided argument that the HSR Act is a "federal antitrust law" from which "mergers attributable to a state" are exempt. *Id.* at 13. Under that argument, they conclude that, because the HSR Act is an antitrust law, the state action doctrine necessarily can apply to exempt the Hospitals from its requirements. *Id.* at 13-14. But none of these cases supports extending the state action doctrine to the HSR Act. Rather, as the Supreme Court explained in *Dental Examiners*, "the Court in *Parker v. Brown* interpreted the antitrust laws to confer immunity on *anticompetitive conduct* by the States when acting in their sovereign capacity." 574 U.S. at 503 (emphasis added) (citing *Parker*, 317 U.S. at 350-51). Thus, as applied to entities like the Hospitals, state action protection requires that the anticompetitive conduct be "clearly articulated and affirmatively expressed as state policy," and that it be "actively supervised by the State itself." *Midcal*, 445 U.S. at 105 (internal quotation marks omitted). *Phoebe-Putney* and *Motor Carriers* illustrate the doctrine's focus on specific anticompetitive conduct to determine whether it qualifies for state action protection under *Midcal*. Here, however, the FTC has alleged no anticompetitive conduct.

In *Phoebe Putney*, the FTC alleged that the local hospital authority's acquisition of another hospital was anticompetitive and sought to preliminarily enjoin the merger on that basis. The Supreme Court explained that the state action defense is "disfavored," and thus that the doctrine provides a potential defense to liability "only when it is clear that the challenged

*anticompetitive conduct* is undertaken pursuant to a regulatory scheme that is the State's own."
568 U.S. at 225 (emphasis added). Addressing a claim by the local hospital authority that its
monopolistic acquisition of another hospital did not violate the Clayton Act, the Supreme Court
held the state action defense was not available because state law did not authorize
anticompetitive mergers and thus the transaction did not meet *Midcal*'s "clear articulation test."
568 U.S. at 219-20. The Court's passing reference in the decision's introduction to exemption
"from scrutiny under the federal antitrust laws," *id.* at 219, did not mean that the transaction
could escape antitrust review entirely. Moreover, the Supreme Court said nothing about the
applicability of the HSR Act to the transaction. Instead, the Court addressed the substantive
merits of the FTC's antitrust claim and the hospital authority's state action defense. *Id.* at 219-36.

   *Motor Carriers*, likewise, does not stand for a broad principle of freedom from any
antitrust scrutiny or investigation. It merely stands for the proposition that non-state actors that
engage in anticompetitive conduct pursuant to a clearly articulated state policy and that are
actively supervised by the state can assert a state action defense when that anticompetitive
conduct is challenged. 471 U.S. at 57. Nothing in *Motor Carriers* or the Hospitals' other cited
cases suggests that private companies that may be able to assert a state action defense are
immune from investigation. *See id.*; *see also* Hospitals' Mem. at 9 (citing *FTC v. Ticor Title Ins.
Co.*, 504 U.S. 621, 632-33 (1992) (holding that state regulatory regimes for title insurance rates
did not satisfy the active supervision inquiry and thus state action was not a defense to horizontal
price fixing among private entities)).

   The unreported decision in *Hunnicutt v. Tafoya-Lucero*, 2022 WL 832566, at *4 (D.N.M.
Mar. 21, 2022) cited by the Hospitals, Hospitals' Mem. at 9, is particularly unpersuasive. There,
the district court held that a prisoner's monopoly and price-fixing claims against the New

Mexico Corrections Department were barred by the state action doctrine. In so ruling, the court made a broad statement that the state action doctrine "has been expanded to apply to all of the federal antitrust laws, including the Clayton Act and the Robinson-Patman Act." *Id.* at 4 (citing *Porter Testing Lab. v. Bd. of Regents for Okla. Agric. & Mech. Colls.*, 993 F.2d 768 (10th Cir. 1993)). The court, however, undertook no *Midcal* analysis of the anticompetitive conduct alleged by the plaintiff. And the Tenth Circuit case the *Hunnicutt* court cited, *Porter Testing*, far from announcing a broad rule of immunity from antitrust scrutiny, involved a substantive analysis of the alleged anticompetitive conduct under the *Midcal* test. 993 F.2d at 770-73.

In this case, the FTC does not challenge any anticompetitive conduct, but seeks only to remedy the Hospitals' failure to comply with the HSR Act so that it may conduct an investigation as contemplated under the statute. In the absence of any alleged anticompetitive conduct, there is nothing for the state action doctrine to protect. The Hospitals' assertion of an implied state action exemption under the HSR Act fails as a matter of law and logic.

### E.     The Hospitals' assertions about FTC policy are wrong and irrelevant.

The Hospitals' assertion that "[t]o the Hospitals' knowledge," the FTC has never enforced the HSR Act "against a COPA-approved merger," and that the FTC "has now reversed course," Hospitals' Mem. at 6, is irrelevant, baseless, and wrong.

The Hospitals' assertion is irrelevant because the antitrust agencies' enforcement decisions, including those under the HSR Act, are subject to the agencies' prosecutorial discretion such that a decision to enforce or not to enforce in any particular case sheds no light on any supposed agency policy. "An agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). The nature of these decisions make them generally unsuitable for

judicial review, *id.*, and certainly provide no grounds for recognizing a judicially created exemption to the HSR Act for COPA-approved mergers.

The assertion is baseless because the Hospitals have no way of knowing what actions the agencies have taken and why in response to any HSR Act filing, or failure to file, let alone filings involving COPA-approved mergers. Not surprisingly, the assertion appears nowhere in the Hospitals' statement of undisputed facts. Dkt. 75-2. HSR Act premerger notification filings are non-public and "no such information or documentary material may be made public, except as may be relevant to any administrative or judicial action or proceeding," 15 U.S.C. § 18a(h), or if "early termination" of the waiting period is requested and then granted by the FTC and DOJ, *id.* § 18a(b)(2). Given the confidential treatment afforded HSR Act filings, the Hospitals have no grounds to speculate about a supposed policy regarding COPA-approved mergers.

Finally, while the FTC's decision on any HSR Act filing is irrelevant to the issues before this Court, the public record reveals at least one instance of a COPA-approved transaction that was filed with the federal government pursuant to the HSR Act.[6] Given the confidentiality of HSR Act filings, the FTC discloses here only what is available in the public record.

## II.   The Hospitals' arguments that the state action doctrine applies to their transaction are irrelevant and unsubstantiated.

The only issue in this case is whether the Hospitals failed to comply with the notification-and-waiting period requirements of the HSR Act. The Hospitals propose that the Court *first*

---

[6] *Compare* Staff Policy Paper, *FTC Policy Perspectives on Certificates of Public Advantage*, FTC 1, 8 (Aug. 15, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/COPA_Policy_Paper.pdf (identifying COPA-approved transaction between Memorial Mission Hospital and St. Joseph's), *with* Granting of Request for Early Termination of the Waiting Period Under the Premerger Notification Rules, 63 FR 67884-01, at *67884 (Dec. 9, 1998) (providing notice of early termination of the HSR Act waiting period for the same transaction on October 28, 1998).

evaluate the fact-intensive question of whether their transaction has satisfied the elements of the

state action doctrine, and *then* decide whether the state action doctrine constitutes an exemption

to the notification-and-waiting period requirements of the HSR Act. The Hospitals' proposal is

backwards: the Court need not assess the fact-intensive merits of the Hospitals' state action

defense, in particular based on the Hospitals' self-serving, redacted, and otherwise incomplete

record. Those alleged facts are not material and are not undisputed for purposes of the Hospitals'

summary judgment motion.

### A.    The Hospitals' suggestion that the Court decide the merits of their purported state action defense before investigation puts the cart before the horse.

The Court should deny the Hospitals' invitation to decide the merits of their purported

state action defense. The Hospitals' state action defense is not relevant to the question of whether

the Hospitals were obligated to file under the HSR Act, and it would be a wasteful exercise for

the Court to evaluate the merits of that defense at this juncture.[7] It may turn out that the FTC,

after its investigation, elects not to challenge the Hospitals' transaction at all—but an HSR filing

is the starting point for such a determination. Furthermore, the Hospitals' demand for a ruling

from this Court on the merits of its claimed state action defense to the underlying transaction

amounts to a request for an inappropriate advisory opinion. *See United States v. Marine Shale*

---

[7] The Hospitals' reliance on Judge Jackson's order transferring this case from the U.S. District Court for the District of Columbia to this Court, Mem. Op. & Order to Transfer, *FTC v. La. Children's Med. Ctr.*, No. 2:23-cv-1890 (D.D.C. May 23, 2023), Dkt. 31, is misplaced. In that order, the court analyzed a motion to dismiss for lack of personal jurisdiction, *id.* at 9-16, and a motion for transfer, *id.* at 16-26. The court held that "in its discretion, that transferring this action is appropriate under section 1404(a)." *Id.* at 16. Notwithstanding the Hospitals' selective quotations, the court did not rule on FTC's motion for injunction. *See id.* at 26 (ordering the case transferred). To the extent the court implied that a ruling on the merits of the Hospitals' state action claim *must* precede a ruling on the question whether the state action doctrine can exempt a party from the requirements of the HSR Act, the FTC respectfully disagrees with this dicta for the reasons stated herein.

*Processors*, 81 F.3d 1329, 1351-52 (5th Cir. 1996) (declining to give an advisory opinion on matters that did not affect the issues before it and that could be litigated in a later proceeding).

The Hospitals argue that "[m]erging parties routinely make unilateral determinations as to whether they are exempt [from reporting requirements under the HSR Act], either because they fall below monetary thresholds or because they fit within the 12 statutory or 29 additional regulatory exemptions." Hospitals' Mem. at 20. The Hospitals' argument, however, fails to acknowledge that the state action doctrine is not one of the express statutory or regulatory exemptions in the first place. The Hospitals argue Congress contemplated that the FTC "may bring an enforcement action like this one for a court to answer the question" of whether a claimed exemption applies, citing *United States v. Farley*, 11 F.3d 1385, 1388 (7th Cir. 1993). Hospitals' Mem. at 20. But in *Farley*, the claimed exemption was expressly enumerated in the HSR Act. 11 F.3d at 1388; *see also* 15 U.S.C. § 18a(c)(9) (exempting "acquisitions, solely for the purpose of investment, of voting securities . . .").

There is not a single exemption to filing—in the statute or rules—whose applicability requires a fact-intensive assessment of whether the proposed transaction may ultimately violate the antitrust laws or may be protected from liability under those laws by a defense. Rather, across the board, the HSR Act's exemptions describe the *nature* of assets at issue or other specific *characteristics* of transactions. The exemptions include, for example: "acquisitions of goods or realty transferred in the ordinary course of business," "acquisitions of bonds, mortgages, deeds of trust, or other obligations which are not voting securities," and certain acquisitions of securities, 15 U.S.C. § 18a(c)(1)-(3), (9)-(10); *see also* 16 C.F.R. § 802.2-3 (exempting "[c]ertain acquisitions of real property assets" and "[a]cquisitions of carbon-based mineral reserves").

Because the FTC and this Court lack the factual information necessary to evaluate the merits of the Hospitals' state action defense, the Court should follow the logical sequencing that is consistent with the HSR Act's text and purpose. The only question before the Court is whether there is a state action exemption to the HSR Act, not whether the Hospitals could ultimately mount a successful defense to a hypothetical substantive antitrust challenge to their transaction.

**B.** **The Hospitals are not entitled to a ruling that the state action defense applies to their transaction.**

The FTC has not taken a position on whether the transaction is anticompetitive under the antitrust laws or whether the state action doctrine may provide a defense to antitrust liability. The question of whether there is a factual dispute is at best premature. Regardless, the Hospitals are not entitled to a ruling that the state action defense would apply to their transaction.

The Hospitals wrongly suggest that it is a foregone conclusion that they have satisfied the elements of a state action defense. Hospitals' Mem. at 2 ("There is [] no legitimate dispute that the Hospitals' acquisition qualifies for state action immunity."). That remains to be determined. As the Hospitals agree, non-sovereign actors (like private hospitals) may invoke the state action defense only if they can show (1) that the anticompetitive conduct was taken in accordance with a "clearly articulated and affirmatively expressed . . . state policy" to displace competition, and (2) that the conduct is "actively supervised by the State itself." *Id.* at 9-10 (citing *Midcal*, 445 U.S. at 105) (internal citations omitted). The *Midcal* test, is "rigorous" and requires "[t]he most searching level of scrutiny." *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 573 (3rd Cir. 2017). The analysis is also "flexible and context dependent." *Dental Exam'rs*, 574 U.S. at 515; *see also Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 46 (1985) (the "requirement of active state supervision serves essentially an evidentiary function"); *Ticor*, 504 U.S. at 638 (holding state action defense does not apply "[i]n the absence of active

supervision in fact"). Indeed, private actors that seek to invoke the state action defense are frequently unsuccessful. *See, e.g.*, *Dental Exam'rs*, 574 U.S. at 504-05 (the state action defense "does not always" apply where a state "delegates control over a market to a nonsovereign actor"); *Ticor*, 504 U.S. at 639-40 (finding no state action defense without "active state supervision"); *Patrick*, 486 U.S. at 105 ("the state-action doctrine does not protect the peer-review activities challenged in this case from application of the federal antitrust laws").

The Hospitals have not shown that the State of Louisiana "clearly articulated" a specific intent to exempt the Hospitals' transaction from the HSR Act[8] or that the Louisiana AG has engaged in sufficient "active supervision" of the Hospitals' conduct as a matter of law.[9] The Hospitals' contention that "the COPA's terms and conditions facially provide for ongoing supervision," Hospitals' Mem. at 13, disregards the fact-specific nature of the *Midcal* standard and illustrates the danger of allowing parties unilaterally to declare they have met the state action defense. The granting of a COPA does not, in itself, show active supervision. The COPA is, at best, one piece of evidence of state supervision of the Hospitals' transaction. Although a COPA is likely relevant to a state action defense, any findings made pursuant to state law do not definitively answer the federal law question of whether the state action defense applies. *See Dental Exam'rs*, 574 U.S. at 515 (state action protection is a federal, not state, question).

Notably, although a non-redacted record would not cure the fundamental problem with addressing the merits of the Hospitals' state action defense before the FTC is permitted to

---

[8] As a matter of law, the FTC does not concede that a state *could* clearly articulate an intention to exempt a merger from the procedural requirements of the HSR Act, but Louisiana made no such effort here. The COPA statute makes no mention of the HSR Act's requirements. *See* La. Stat. §§ 40:2254.1 *et seq.*

[9] The FTC does not agree with the Hospitals' argument that active supervision can end with the consummation of the merger, Hospitals' Mem. at 12-13, but that is not relevant for resolution of the question before the Court.

investigate under the HSR Act, the one-sided record before the Court is heavily redacted and otherwise incomplete. For example, the Hospitals have submitted a version of the Hospitals' COPA application that contains significant redactions. *See, e.g.*, Hospitals' Mot. for Summ. J., Ex. A, Dkt. 75-4, at 22, 23, 24, 26, 50, 53, 54, 59, 62, B-1, B-4, B-9, B-10, B-11, B-14, B-15, B-16, B-45, B-59, B-60, B-61, B-64, B-65, B-66, B-67, B-69, B-70, B-71, B-73, C-1, C-2, D-1, G-1, G-2, K-1, O-2, O-3, O-4, S-1.

HSR Act notification filings by the Hospitals would presumably include a non-redacted version of the COPA application and other materials bearing on the transaction and the Hospitals' purported state action defense, including the "active supervision" requirement.[10] For example, HSR Act filings might include unredacted versions of the "Description of Negotiations of the Agreement" (C-1, C-2), the "Proposed Agreement" (D-1), "Letters of Intent" (G-1, G-2), "Valuation Information" (K-1), "Financial Records" (O-2, O-3, O-4), and "Market Studies" (S-1). If there were a written decision from the Louisiana AG's office explaining its rationale for granting the Hospitals' COPA application, presumably the Hospitals would include that in their HSR Act filing as well. To be clear, these are just examples of the types of materials that an HSR Act filing would contain. *See* 15 U.S.C. § 18a(d)(1) (requiring "such documentary material and information relevant to a proposed acquisition").

In sum, the merits of the Hospitals' state action defense are not relevant to this action, and the FTC has not taken a position on the merits of the Hospitals' state action defense. Nor could it. The FTC has not conducted fact finding *because* the Hospitals failed to comply with the

---

[10] *See* 15 U.S.C. § 18a(h) ("Any information or documentary material filed with the Assistant Attorney General or the Federal Trade Commission pursuant to this section shall be exempt from disclosure under [The Freedom of Information Act], and no such information or documentary material may be made public . . . .").

HSR Act notification-and-waiting period requirements. Accordingly, and in any event, given the incomplete, one-sided record, neither the Louisiana AG nor the Hospitals is entitled to a ruling on the merits of the Hospitals' state action defense, including on the fact-specific question of "active supervision."

### III.    The Hospitals' arguments against granting the FTC's requested relief are premised on the wrong legal standard and otherwise lack merit.

The Hospitals ask this Court to decline to order relief on the FTC's claim *even after a finding that they violated the law*. Hospitals' Mem. at 24. In doing so, the Hospitals cite the wrong standard for granting equitable relief under the HSR Act. *Id.* at 8.

The Hospitals propose that the FTC must satisfy the common law standard for a permanent injunction applicable to a private-party litigant in order to obtain equitable relief under the HSR Act. *Id.* That standard does not apply. Rather, "the function of a court in deciding whether to issue an injunction authorized by a statute of the United States to enforce and implement Congressional policy is a different one from that of the court when weighing claims of two private litigants." *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 27 (2d Cir. 1972). "In a Government case the proof of the violation of law may itself establish sufficient public injury to warrant relief." *California v. Am. Stores Co.*, 495 U.S. 271, 295–96 (1990). Where, as here, the statute authorizes injunctive relief to halt or prevent the violation of law, traditional equitable considerations do not apply. *See CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992). Accordingly, "the Fifth Circuit found an injunction appropriate pursuant to [the Food, Drug and Cosmetic Act] where the Government demonstrated a violation of the statutory provisions at issue without any mention of the traditional equitable criteria." *United States v. Endotec, Inc.*, 563 F.3d 1187, 1194 n.9 (11th Cir. 2009) (citing *United States v. Hoxsey Cancer Clinic*, 198 F.2d 273 (5th Cir. 1952)). When injunctions are provided by

statutory scheme, "the legislative goals are the framework within which the court operates in deciding whether to grant injunctive relief." *Diapulse*, 457 F.2d at 28. Indeed, the sole case assessing whether to grant equitable relief under the HSR Act does not employ the standard that the Hospitals advocate. *See FTC v. McCormick & Co.*, 1988 WL 43791, at *2 (D.D.C. Apr. 26, 1988) (granting an injunction after finding it "necessary to ensure compliance with the requirements of Section 7A of the Clayton Act and to give the Commission and its staff the time provided by Congress for evaluation of the proposed acquisition").

The standard for equitable relief in this case is in Section (g)(2)(A) and Section (g)(2)(C) of the HSR Act. 15 U.S.C. § 18a(g)(2)(A), (C). Those sections give this Court discretion to "order compliance" and to "grant such other equitable relief as the court in its discretion determines necessary or appropriate." *Id.* The sections thus resemble the injunctive provision at issue in *Diapulse*, *Endotec*, and *Hoxsey Cancer Clinic*, which provided that "district courts of the United States and the United States courts of the Territories shall have jurisdiction, for cause shown to restrain violations of" the Food, Drug and Cosmetic Act. 21 U.S.C. § 332. In the context of federal statutes, "what relief is 'appropriate' is to be determined 'in light of the purpose of the Act.'" *Dallas Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 318 (5th Cir. 2017) (quoting *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985)) (finding that "the district court's power to grant 'appropriate' relief" confers "broad discretion"). The Fifth Circuit has found that "the best evidence" for determining appropriate relief "is the statutory text itself." *Id.* (citing *Hotze v. Burwell*, 784 F.3d 984, 997 (5th Cir. 2015)).

The FTC has requested appropriate relief here. The Hospitals violated the HSR Act when they closed their transaction before complying with the statute's premerger notification-and-waiting period requirements. The Court should require the Hospitals to file HSR Act

notifications. *See Diapulse*, 457 F.2d at 28 (citing *United States v. City & County of San Francisco*, 310 U.S. 16, 30-31 (1940)) ("The passage of the statute is, in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained."). Doing so would preserve the federal government's ability to review transactions reportable under the HSR Act—as Congress intended—and ensures an orderly investigation and resolution of antitrust concerns prior to consummation, or, in this case, before irreparable integration. As the FTC previously explained in its Motion for Summary Judgment, the FTC's Proposed Order to Maintain Assets is a minimally invasive approach that merely prevents irreversible damage pending the FTC's review under the HSR Act. FTC Mem. at 20. This comports with the HSR Act's purpose. Moreover, LCMC has not proposed any modifications to the Proposed Order to Maintain Assets, which mirrors the Order already agreed upon by LCMC as part of a stipulated order in the U.S. District Court for the District of Columbia. *See* Stipulation and [Proposed] Order, *FTC v. La. Children's Med. Ctr.*, No. 1:23-cv-01103-ABJ (D.D.C. Apr. 21, 2023), ECF No. 9. If the Proposed Order to Maintain Assets creates difficulty for LCMC to provide effective patient care, the FTC will be open to meet and confer about any proposed alterations, and LCMC is always free to move this Court for a modification.

As previously noted, an HSR Act investigation does not impose antitrust liability on the Hospitals' transaction or inhibit Louisiana's COPA program. Any delay to the Hospitals' integration as a result of observing the statutorily required waiting period is driven not by the HSR Act, but by the Hospitals' failure to timely file under the HSR Act prior to commencing integration, despite having ample time to do so. The Hospitals themselves chose not to comply with the HSR Act. The Court should not reward this noncompliance now. Doing so would encourage future merging parties to engage in the same behavior the Hospitals have engaged in

here—i.e., consummating a transaction without FTC or DOJ review—anticipating that despite violating the law they could evade its requirements. In short, allowing the Hospitals to continue to integrate their business operations before the FTC has had the opportunity to investigate the transaction could result in the exact harm that the HSR Act was intended to combat.[11]

## **CONCLUSION**

For the reasons stated above, the Commission respectfully requests that the Court deny Louisiana Children's Medical Center's and HCA Healthcare, Inc.'s Motion for Summary Judgment.

Dated: August 9, 2023                        Respectfully submitted,

                                             */s/ Mark Seidman*

                                             Mark Seidman
                                             Daniel J. Matheson
                                             Adam Pergament
                                             Stephen Rodger
                                             Bureau of Competition
                                             Federal Trade Commission
                                             600 Pennsylvania Avenue, NW
                                             Washington, DC 20580
                                             Tel: (202) 326-3296

---

[11] Even if the Court rules that the Hospitals' proposed standard applies to relief sought under Section 18a(g)(2), for the reasons stated herein, the FTC's requested relief still meets the standard.